WESTERN INDEMNITY CO. v. MacKECHNIE. (No. 8119.)

(Court of Civil Appeals of Texas. Dallas. May 24, 1919.)

1. APPEAL AND ERROR ⟨key⟩1062(1)—HARMLESS ERROR—SUBMISSION OF ISSUE—RELEASE — "KNOW" — "UNDERSTAND" — "APPRECIATE"—"EFFECT."

In action on accident policy defended on ground that insured had executed release, submission of issue of whether insured was "possessed of sufficient mental capacity to know, understand, and appreciate the nature and effect and result of his act," *held* not prejudicial, the words "know, understand, and appreciate" having been used with the same meaning and the word "effect," with same meaning as "result," the question being merely whether insured had mental capacity to understand the nature and effect of execution of release.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Appreciate; Effect; Know; Second Series, Understand.]

2. INSURANCE ⟨key⟩668(11) — ACCIDENT INSURANCE—CAUSE OF DISABILITY—DEATH—DISEASE.

In action on accident policy, whether the injuries were effected, directly and independently of all other causes, through accidental means, or whether disease or use of alcoholic liquors caused or contributed thereto, *held* for the jury.

---

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. INSURANCE** ⟐⟐668(14) — **RELEASE** — **MENTAL COMPETENCY—JURY QUESTION.**

Whether insured, at time of executing release to insurance company, was competent to fully comprehend the nature of the release was for the jury.

**4. INSURANCE** ⟐⟐665(5) — **ACCIDENT INSURANCE** — **CAUSE OF DISABILITY AND DEATH** **—SUFFICIENCY OF EVIDENCE.**

Evidence *held* sufficient to warrant finding that insured's injuries resulted through accidental means, and that such injuries, independently of other causes, totally disabled insured, and caused permanent paralysis, and finally his death.

**5. TRIAL** ⟐⟐352(5)—**SPECIAL ISSUES.**

In suit on accident policy to recover both weekly indemnity for disability and initial principal sum for insured's death, the submission, for a "Yes" or "No" answer, of a special issue whether the claimed injuries to insured did "continuously and wholly disable" insured, "and result in his death," *held* erroneous, as combining distinct issues, which might be answered differently.

**6. TRIAL** ⟐⟐352(5)—**ACCIDENT INSURANCE—SUBMISSION OF ISSUE.**

In action on accident policy, where defense was that either one of two diseases, or use of intoxicants caused or contributed to insured's death, the submission in one issue of whether plaintiffs had proved that neither the use of liquor nor either disease caused, or contributed to cause, the injury which resulted in insured's death, was erroneous, involving several issues of fact, which insurer was entitled to have separately submitted.

**7. INSURANCE** ⟐⟐466 — **ACCIDENT INSURANCE—PROXIMATE CAUSE.**

Under accident policy insuring against bodily injuries inflicted, "directly and independently of all other causes," through accidental means, if disease with which insured was suffering caused apoplexy resulting in insured's death, or if injury received by insured in a fall concurred with such disease in causing such apoplexy, the insurance company was not liable, but was liable if the injury from the fall was the sole cause of the apoplexy.

**8. APPEAL AND ERROR** ⟐⟐207 — **IMPROPER ARGUMENT—NECESSITY OF OBJECTION.**

Where court fails, on its own motion, to confine counsel strictly to the evidence, under court rules 39 and 41 (142 S. W. xx), the opposing counsel has the privilege of presenting his point of objection, but is not required to do so to subsequently avail himself thereof.

**9. APPEAL AND ERROR** ⟐⟐1060(1) — **TRIAL** ⟐⟐125(5)—**CONDUCT OF COUNSEL IN ARGUMENT—PREJUDICIAL REMARKS.**

In action by insured's surviving widow against insurance company on accident policy, conduct of counsel for surviving widow, in referring to the widow as a "poor old woman without friends and without money," and in criticising insurer's counsel for objection to such remarks, *held* improper and prejudicial.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Suit by Mrs. Ellen MacKechnie and another against Western Indemnity Company. Judgment for named plaintiff, and defendant appeals. Reversed and remanded.

Carden, Starling, Carden, Hemphill & Wallace, of Dallas, for appellant.

R. R. Hazlewood, of Amarillo, and Cockrell, Gray, McBride & O'Donnell, of Dallas, for appellee.

TALBOT, J. This is the second time this case has been before this court. The opinion on the former appeal is reported in 185 S. W. 615. The suit was originally instituted by the appellee, Mrs. Ellen MacKechnie, as guardian of the person and estate of Edward MacKechnie, against the appellant, Western Indemnity Company, a corporation organized under the laws of the state of Texas, and the Western Casualty & Guaranty Insurance Company, a corporation created under the laws of the state of Oklahoma, on an accident insurance policy. Since the former appeal, and prior to the trial resulting in the judgment from which the present appeal is prosecuted, Edward MacKechnie died, and by an amended petition the said Mrs. Ellen MacKechnie and Stewart MacKechnie, as plaintiffs, continued the prosecution of the suit in their own behalf. The petition alleges, in substance, that the said Mrs. Ellen MacKechnie is the surviving wife of Edward MacKechnie; that Stewart MacKechnie is their son, and that they are the only surviving heirs of the said Edward MacKechnie; that the appellant, Western Indemnity Company, has taken over all the business, properties, and insurance policies of its codefendant herein, and has assumed all its liabilities, including the terms and liabilities of the contract herein sued on. The petition further alleges that the Western Casualty & Guaranty Company executed and delivered to Edward MacKechnie on February 20, 1911, its written policy of insurance, whereby it insured the said Edward MacKechnie in the initial principal sum of $5,000, and for a weekly indemnity of $25 for the term of 12 months from the date of said policy, against bodily injuries inflicted, directly and independently of all other causes, through accidental means, which policy, by renewals, was continued in force for the period of three years from its date; that said policy of insurance, by its terms, insured the said Edward MacKechnie against bodily injuries effected, directly and independently of all other causes, through accidental means, and provided that if such injuries should, independently and exclusively of all other causes, immediately, continuously, and wholly dis-

⟐⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

able and prevent the assured from performing any and every kind of duty pertaining to his occupation, and during the period of such continuous disability, and within 200 weeks from date of the accident, should result in the loss of the life of the said Edward MacKechnie, the said insurance company would pay the sum of $5,000, denominated in the policy as the "initial principal sum," and in addition the weekly indemnity as provided for in said policy to the date of the death of the said Edward MacKechnie, plus any accumulations which might have accrued under the terms of the policy at the time such injuries were sustained; that said policy of insurance also stipulated that if such injuries to the said Edward MacKechnie should not result in his death, but should immediately, continuously, and wholly disable and prevent him from performing any and every kind of duty pertaining to his occupation, and during the period of such disability, and within 90 days from the date of the accident, should directly, independently, and exclusively of all other causes result in permanent paralysis, and if within 30 days after the expiration of one year from the date of such paralysis he should be declared by competent and duly constituted medical authority to be permanently paralyzed, and to be thereafter unable to engage in any work or occupation for wages or profit, the Western Casualty & Guaranty Insurance Company would pay him the principal sum of said policy, to wit, $5,000, and in addition thereto the weekly indemnity stipulated to be paid for one year. It is further alleged that on September 25, 1913, the said Edward MacKechnie, while attempting to board a street car in the city of Dallas, did suffer a fall to the ground or pavement, or upon or against said car, and did thereby sustain and suffer bodily injuries which were effected directly and independently of all other causes through accidental means; that said injuries did, independently and exclusively of all other causes, immediately, continuously, and wholly disable and prevent the said Edward MacKechnie from performing any and every kind of work or duty pertaining to his occupation, and did, during the period of such continuous disability, and within 200 weeks from the date of said accident, result in the death of said Edward MacKechnie; that, even though plaintiffs should be mistaken in stating that said injuries resulted in said Edward MacKechnie's death, they, nevertheless, state that said injuries did, independently and exclusively of all other causes, immediately, continuously, and wholly disable and prevent said Edward MacKechnie from performing any and every kind of duty pertaining to his occupation, and not only did such disability continue from the date of such accident up to the death of said Edward MacKechnie, but said injuries did further, during the period of such disability, and on, to wit, October 25, 1913, and within 90 days from the date of said accident, result directly, independently, and exclusively of all other causes in permanent paralysis of the said Edward MacKechnie, and within 30 days after the expiration of one year from the said date of October 25, 1913, the said Edward MacKechnie was declared by a competent and duly constituted medical authority to be permanently paralyzed, and permanently insane, and to be thereafter unable to engage in any kind of occupation or work for wages or profit; that immediately following said accident, and resulting directly, independently, and exclusively therefrom, the said Edward MacKechnie became, and continued to be, unto his death, insane; that on, to wit, February 3, 1914, the said MacKechnie was adjudged to be insane by the board of lunacy, and by the probate court of Potter county, Tex., and the plaintiff Ellen MacKechnie was by the county court of said county appointed guardian of the person and estate of the said Edward MacKechnie, and continued such up to his death. Plaintiffs also alleged that said policy or insurance contained the further stipulation and provision, as follows, to wit, "Policy to be payable in case of my death to Ellen MacKechnie, whose relation to me is that of wife;" that plaintiffs assume the true meaning of said policy in its entire terms to be that, if said injuries to said Edward MacKechnie should result in his death within 200 weeks from the date of said accident, the "initial principal sum" thereof, together with the the percentage "accumulations" thereunder, should be payable to said Ellen MacKechnie, but that if said injuries should not result in death within that time, but should cause the disability and paralysis of said Edward MacKechnie, and result in his being declared by medical authorities to be paralyzed and disabled, as contemplated by the terms of said policy, then such "initial principal sum" should be paid to the said Edward MacKechnie, and now, he being dead, to his heirs suing herein; and that the further meaning of said policy is that the weekly indemnity thereunder should be at all events paid to said Edward MacKechnie, and now, he being dead, to his heirs suing herein; that, if such be not the true meaning of said policy, then same is by its terms payable entirely to the said Ellen MacKechnie. In any event, both plaintiffs ask and pray that the judgment to be rendered herein shall be rendered altogether in favor of the said Ellen MacKechnie. Plaintiffs assert that by reason of the provisions of the policy the defendant was liable for the initial or principal sum of $5,000, also for the weekly indemnity and accumulations, together with interest, statutory penalties, and attorney's fees. The defendant answered by general denial and

by special denial. They denied that either the alleged paralysis or the alleged insanity or the alleged death of the said Edward Mac-Kechnie resulted directly, independently, and exclusively of all other causes from an accident within the provisions of the policy sued ,on; that, if said Edward MacKechnie suffered from paralysis or insanity, such paralysis or insanity was caused or contributed to by disease or natural causes; that said MacKechnie, prior to, and at the time of, his alleged accident, suffered from the diseases of arteriosclerosis and Bright's disease, and that on account of each and both of said diseases a blood vessel in the brain of Mac-Kechnie on August 25, 1913, long after his alleged accident, became ruptured, which rupture resulted in apoplexy, which apoplexy resulted in the alleged paralysis and insanity. The defendant further alleged that the said MacKechnie, for many years prior to said alleged accident and subsequent thereto, was an habitual and constant user of intoxicating liquor, and that such use of such liquor, either alone or together with said diseases, or with one or the other, caused and contributed to cause said rupture of said blood vessel in said brain, resulting as aforesaid; that such paralysis, insanity, or death, if any, was caused, or contributed to, by such arteriosclerosis, or Bright's disease, or such habitual use of intoxicating liquor, either acting separately or together, producing the alleged paralysis, insanity, or death. They further answered that on or about the 25th day of September, 1913, MacKechnie made claim under his policy for the alleged injuries and for loss of time resulting therefrom, and that they thereupon paid him $142.-15, and accepted from him a full, complete, and final release and discharge from any and all liability resulting from said policy and said injuries and accident.

The plaintiffs filed a supplemental petition denying these allegations in the defendant's answer, and charging that at the time of the execution of the purported release, and the settlement therein mentioned, the said Edward MacKechnie was of unsound mind, and unable to understand the purport or extent of said release, and the same was not binding upon him, and offered to return to the defendants the sums of money, if any, with legal interest, paid by them upon said purported settlement.

The case was submitted to a jury upon special issues, and judgment upon their finding rendered in favor of the plaintiff Ellen Mac-Kechnie in the sum of $13,781.92, which included principal, interest, and attorney's fees, together with all costs. It was further adjudged that the plaintiff Stewart MacKechnie take nothing by the suit. Motion for a new trial having been overruled, the defendant, Western Indemnity Company, perfected an appeal.

The record shows, as is alleged in appellee's petition, the issuance of the accident insurance policy sued on, and that said policy was in force on the 25th day of September, 1913; that Edward MacKechnie on that day, while attempting to catch a moving street car with the view of boarding it, fell and accidentally broke one of his arms and bruised his forehead; that on the 15th day of October, 1913, 20 days after this accident, the said MacKechnie, in consideration of the sum of $142.15 paid to him by appellants, released them, in writing, from all claims under the policy issued to him "on account of and in full compromise settlement for injuries accidentally sustained on or about September 25, 1913."

The court submitted to the jury the following issue:

"Was Edward MacKechnie at the time he executed the release, on October 15, 1913, possessed of sufficient mental capacity to know, understand, and appreciate the nature and effect and result of his act? Let your answer be the one word, 'Yes' or 'No.'"

The appellant requested this instruction:

"You are instructed that the burden of proof is upon the plaintiffs to establish by a preponderance of the evidence that Edward Mac-Kechnie was mentally incapacitated at the very time he executed the release in evidence to know that he had done so, and, the plaintiffs having wholly failed to offer any testimony whatever tending to establish this fact, it therefore follows, as a matter of law, that said release cannot be set aside, and you are instructed to return a verdict for the defendants as follows: 'We, the jury, find for the defendants.'"

The requested instruction was refused, and the court's action in refusing it, and in submitting the issue quoted, forms the basis of appellant's first, second, and third assignments of error, which are presented together in the brief. The propositions here contended for by appellant are, in substance, (1) that there was no evidence that Edward Mac-Kechnie did not have sufficient mental capacity to understand the nature and effect of the release at the time he signed it, and, since it was not alleged that the release was executed by fraud, accident, or mistake, the peremptory instruction should have been given; (2) that the issue submitted imposed upon the appellant a greater burden than required by law, in that it required the jury to find, in order to resolve the issue favorable to appellant, that MacKechnie not only had sufficient mental capacity to understand the nature of the release, but sufficient legal knowledge to construe the legal effect thereof; (3) that the issue was too burdensome, in that it required the jury to find, before they would be authorized to answer the question "Yes," that MacKechnie not only had sufficient mental capacity to know, but to understand

and appreciate, the nature and effect of his act, and further, the result of his act, whereas, if MacKechnie had sufficient mental capacity either to know or to understand or to appreciate the nature and effect of his act, the question should have been answered "Yes."

The court did not err in refusing to give appellant's said special charge. The charge instructed the jury, in effect, that the plaintiffs had wholly failed to introduce any testimony whatever tending to show that Edward MacKechnie was mentally incapacitated, at the time he executed the release in evidence, to understand the nature and effect thereof. With this view of the testimony we do not agree. The testimony bearing upon the issue is too lengthy to be quoted in this opinion. It has been carefully read and considered, and, in our opinion, it was of such character as to require the submission of the question to the jury for decision. This being true, it would have been positive error to have given the requested charge. The court was therefore right in refusing it, and in submitting the issue to the jury. But the record fails to disclose that appellant, either before or at the time of the submission of the issue, or in its motion for a new trial, contended that the evidence was insufficient to warrant its submission.

[1] Was the form and manner of submitting the issue materially or prejudicially erroneous? That is, did the language used in framing the issue impose upon the appellant, as appellant contends it did, a greater burden than required by law, in that it required the jury to find that MacKechnie not only had sufficient mental capacity to know, to understand and appreciate the nature, effect, and result of his act in executing the release, but possessed sufficient legal knowledge to construe the legal effect of the release? In our opinion a negative answer should be given the question. It may be admitted that more words were used than necessary to properly submit the issue, but we are unable to see how appellant was injured by the phraseology. As here used, there is practically no difference in the meaning of the words "know," "understand," and "appreciate," nor is there any material difference in the meaning of the words "effect" and "result," in the connection used. According to standard lexicographers, to "know" means to perceive or apprehend; to understand. To "understand" means to apprehend the meaning of; to comprehend; to know. To "appreciate" means to be sensible of; to perceive the nature or effect of. "Effect" is that which follows from an antecedent called the cause, the result or consequence of an act, or that which is produced by an antecedent cause. The principle of law involved in the issue is that if Edward MacKechnie had sufficient mental capacity to fully comprehend, to fully understand, the nature and effect of the release executed by him, the release is valid; but, if he did not have capacity equal to a full and clear understanding of the nature and consequences thereof, the release is invalid and not binding upon him. The phraseology of the issue in question imposed no greater burden upon appellant with respect to the question of Edward MacKechnie's mental capacity to understand the nature and effect of his act in executing the release than required by law, nor did it require the jury to find that Edward MacKechnie had any more legal knowledge to understand and appreciate the nature and effect or result of his act in signing the release than the law presumes that every man of sound judgment has.

Assignments of error from 4 to 9, inclusive, are grouped. They complain of the court's refusal to give certain special charges requested by appellant directing the jury to return a verdict in its favor because (1) the evidence shows that if Edward MacKechnie sustained any injury to his head he sustained it at a time, place and under circumstances not alleged in appellee's petition; and (2) because the evidence failed to show that the death of the said Edward MacKechnie or the permanent paralysis or physical incapacity alleged to have been suffered by him resulted from the alleged accident directly, independently, and exclusively of all other causes. Complaint is also made in this group of assignments that the finding of the jury that the bodily injuries sustained by Edward MacKechnie on or about September 25, 1913, were effected, directly and independently of all other causes, through accidental means, is contrary to and unsupported by the evidence. The petition alleged that Edward MacKechnie, while attempting, at or near the corner of Commerce and Murphy streets, to board the car of a street railway, suffered a fall to the ground or pavement, upon or against the street car, and thereby sustained the injuries which were alleged to have been effected, directly and independently of all other causes, through accidental means. The testimony offered by appellees was sufficient to authorize a finding that it was at this time and place the injury to Mr. MacKechnie's head, which appellees claim resulted in a paralytic stroke, permanent paralysis, and finally in his death, was received. The appellant introduced a witness, Robert Clark, whose testimony tended to show that Mr. MacKechnie fell on the sidewalk in front of this witness' saloon, which was located at the corner of Commerce and Murphy streets, 20 or 30 minutes before the fall suffered by him while attempting to catch and board the street car, as alleged by appellee. This witness said that he heard of the accident which Mr. MacKechnie sustained on the street after his fall on the sidewalk in front of the saloon, and that he thought that after the first fall, and before the second one in the street, there was a little blood on Mr. MacKechnie's fore-

head right over the eye on the right side; that the extent of the injury seemed to be "a little bit of a scratch and a little bit of blood." The injury to MacKechnie's head at this time is not described as a bruise or contusion, nor is its description of such a character as to indicate that the head had come in contact with the sidewalk as the result of a fall of his body. There is no positive testimony that Mr. MacKechnie actually fell to the sidewalk at the time referred to by the witness, or if he did, that his head struck the pavement. That either of these things occurred is only an inference of the witness drawn from his observation of what he called a "giving down" of Mr. MacKechnie on his right side as he passed out of the saloon door. On the other hand, there is positive testimony of his falling and striking the side of his face and head against the hard pavement of the street. The witness Wesley Starke testified that he was riding down Commerce street west, on his bicycle, about 20 feet behind a street car going west, and just as the street car passed Murphy street a gentleman who was standing about 20 feet from the corner started out to get on the car, as it seemed, and raised his hand, but that just before he touched the car he fell: that he (the witness) at this time was about 15 feet from the man, was on his bicycle, and stopped a couple of yards from him. This witness further said that the conductor on the street car and others picked up the man that had fallen; that the side of the man's face was covered with mud, and that it seemed to him that there was some blood, but that he was not positive whether he saw any blood on his face or not; that the first time he noticed the man was when he stepped from the curb to the street, raised his hand, and started toward the street car; that after running two or three yards the man fell, but what caused him to fall he did not undertake to state. He further testified that he did not notice anything unusual or different about this man's running from that of other men; that he was a very large man; that he was not close enough to him to smell his breath, and there was nothing to indicate that he was drunk. That this man was Edward MacKechnie is not disputed, and there is ample testimony to the effect that when he was picked up in the street he was practically unconscious, and had a contusion or bruised place over one of his eyes; that up to the very day of the accident in question he had the appearance of being in robust health, unusually bright mentally, well educated, with fine control of the English language, both in speech and writing; that he was in his office on the afternoon of the accident, and about one hour before it occurred; that it was a rainy afternoon; that one of his employers told him there was nothing he could do, and that he could go home if he so desired; that about one hour after he left the

office this same employer received a message from the emergency hospital to the effect that Mr. MacKechnie was there and had been hurt; that he at once went to the hospital and found MacKechnie in a dazed condition; that at the time Mr. MacKechnie left the office there was apparently no change in him from what he had always been, physically and mentally; that he seemed in perfect health when he walked out of the office, about an hour before the accident.

The real issues in the case were whether Edward MacKechnie at the time he executed the release on October 15, 1913, was possessed of sufficient mental capacity to understand the nature and effect of such release, and whether the bodily injuries sustained by Edward MacKechnie, as alleged by appellees, were effected, directly and independently of all other causes, through accidental means, and immediately, continuously, and wholly disabled and prevented him from performing any and every kind of duty pertaining to his occupation, and resulted in permanent paralysis and his death, or whether the disease of arteriosclerosis or Bright's disease or the use of alcoholic liquors caused, or contributed to cause, or concurred in causing, the bodily injury of the said MacKechnie which terminated in his death or permanent paralysis. These issues were submitted to the jury and determined favorably to appellees.

[2, 3] The evidence was sufficient to authorize their submission, but, to have given either of the special charges the refusal of which is made the basis of assignments 4, 5, and 6, under consideration, would have been error. They related to issues of fact and not of law, and it was the imperative duty of the trial court to submit them to the jury for determination. The evidence was also sufficient to authorize the submission of special issues Nos. 1 and 6, requested by appellees, and to which the seventh and eighth assignments of error we are considering relate. These were vital issues in the case and their submission demanded. There is testimony to the effect that, after the accident alleged by appellees, Mr. MacKechnie was neither mentally nor physically the man he was prior thereto. Witnesses testifying in regard to his condition before and about the time he executed the release of October 15, 1913, state, in effect, that in their opinion he was not capable of making a settlement of any matter of importance; "that, so far as indicated by his speech, his mind wasn't working as it should work," that he would start a sentence, but did not seem to be able to carry on any connected conversation; that he would start a sentence, and could not finish it, and frequently could not form the word he desired to speak; that he did not want to undertake to go down steps—was afraid he would fall. One witness, who knew him well and had been associated with him in business, testified

that he called to see him at his boarding house on October 25, 1913, but that he did not think Mr. MacKechnie recognized him. This witness further said that he never saw Mr. MacKechnie after the accident when he thought he was mentally or physically capable of transacting any business. There is much more testimony of a similar character in the record. On the 25th day of October, 1913, Mr. MacKechnie had a stroke of paralysis, and from that time to his death, according to the testimony of many witnesses, he was a physical and mental wreck. In December, 1913, Mr. MacKechnie was carried to Amarillo, Tex., and there came under the observation of Dr. J. R. Wrather. Dr. Wrather testified that he was one of a lunacy commission appointed by the county judge of Potter county for the purpose of making a thorough examination of Mr. MacKechnie's mental condition, and in that lunacy trial ascertained his mental condition, and found him unbalanced mentally; that, in his opinion, Mr. MacKechnie, at the time he examined him, was permanently non compos mentis, and owing to his age and general debility, would grow worse rather than improve. Dr. Wrather further said:

"My opinion from my examination of him is that he had a lick or a fall or a blow on the head that produced this trouble in him. He is suffering with paralysis, and it is my opinion, from examination of him, that it will finally result in total paralysis, and will probably permanently disable him, because his trouble is progressing, owing to his enfeebled condition and advanced age. I think it will continue to grow worse. The cause of his paralysis I believe is from some injury of the head, as I have already stated."

Dr. Wrather further said that he did not know, but that it was not improbable, that Mr. MacKechnie had some arteriosclerosis at his age, but that, so far as he was able to tell, he had no arteriosclerosis; that a slight abrasion on the forehead or eyebrow, without the skull being fractured, might produce concussion, and rupture a meningeal artery, and cause a blood clot on the brain, thereby causing insanity and paralysis. There is also testimony of physicians to the effect that Mr. MacKechnie was not afflicted with Bright's disease, and had no more arteriosclerosis than an ordinary man of his age would have. But it is impracticable to quote or state all the evidence bearing on the issues here undergoing investigation.

[4] It is sufficient to warrant the finding that the bodily injuries alleged by the appellees to have been sustained by Edward MacKechnie on September 25, 1913, were effected, directly and independently of all other causes, through accidental means; that said injuries, independently and exclusively of all other causes, immediately, continuously, and wholly disabled and prevented the said MacKechnie from performing any and every kind of duty pertaining to his occupation; that it resulted in the permanent paralysis of the said MacKechnie, and finally in his death on June 18, 1916.

[5] After submitting to the jury the question whether or not the bodily injuries sustained by Edward MacKechnie on September 25, 1913, were effected, directly and independently of all other causes, through accidental means, which received an affirmative answer, the court submitted to the jury the following issues:

"Did such bodily injuries, independently and exclusively of all other causes, immediately, continuously, and wholly disable and prevent Edward MacKechnie from performing any and every kind of duty pertaining to his occupation, and result in his death? Let your answer be the one word, 'Yes' or 'No,' according as you shall find."

The appellant duly objected to the submission of the question on the ground, among others, that it was "a combination of two issues which the jury might answer definitely, and which the jury ought to be permitted to pass upon separately." The two issues claimed to be submitted in the question were pointed out, but the objections were overruled and exceptions reserved. The question was answered "Yes," and appellant, by an appropriate assignment of error, asserts that the form of submitting the issues was prejudicial error. The proposition advanced is that the "issue was multifarious, and called for a finding of the jury upon two separate and distinct issues, which should have been submitted separately and distinctly." We can see no escape from the conclusion that this contention is correct. Appellees sued to recover weekly indemnity of $25 for the term of 12 months from the date of the policy declared on, in addition to the initial principal sum of $5,000 claimed on account of the death of Edward MacKechnie. Judgment, based upon the findings of the jury, was rendered in favor of appellee, Ellen MacKechnie, for both amounts so sought to be recovered. They were separate and distinct issues depending for solution not necessarily upon the same facts or testimony. The first question submitted is, Did the bodily injuries sustained by Edward MacKechnie, independently and exclusively of all other causes, immediately, continuously, and wholly disable and prevent him from performing any and every kind of duty pertaining to his occupation? Upon an affirmative finding upon this issue depended appellee's right to recover the weekly indemnity. The second question is, Did such injuries result in his death? And upon an affirmative finding upon this issue depended appellee's right to recover the initial principal sum of the policy. Under the evidence adduced both of these questions were questions of fact, both or either of which might have been answered in

the affirmative, or both or either of which might have been answered in the negative. As submitted, the jury was required to answer both in the affirmative or both in the negative. The privilege of answering one in the negative and the other in the affirmative, or vice versa, was not allowed the jury. They were instructed to answer by the "one word, 'Yes' or 'No.'" It has been expressly held in this state that a special issue of fact submitted to a jury for their determination, to which the jury are instructed to answer "Yes" or "No," should submit for their consideration a single question, and should not combine two separate and distinct questions of fact, one of which might be answered in the negative and the other in the affirmative, or vice versa, by the jury. Railway Co. v. Turner, 199 S. W. 868; Tel. & Tel. Co. v. Andrews, 169 S. W. 218.

[6] The court also submitted to the jury the following question:

"Have the plaintiffs shown by a preponderance of the evidence that neither the use of alcoholic liquors nor the disease of arteriosclerosis or Bright's disease caused, or contributed to cause, or concurred in causing the bodily injury, if any, to MacKechnie, which resulted in his death, if you find it did so result? Let your answer be the one word, 'Yes' or 'No,' accordingly as you shall find."

This issue was answered in the affirmative, and appellant, by appropriate assignment of error, complains of it because it submitted and called for a finding of the jury upon several separate and distinct issues of fact, which should have been submitted separately. Appellant not only objected to the submission of this question on the ground stated, but sought to have the several issues of fact embodied therein submitted separately, which was denied. Whether the bodily injuries charged to have been sustained by Edward MacKechnie from the fall alleged, independently and exclusively of all other causes, resulted in his death, or whether the use of intoxicating liquors or the disease of arteriosclerosis or Bright's disease caused, or contributed to cause, or concurred in causing, said bodily injuries and MacKechnie's death, were issues of fact sharply drawn by the evidence. In submitting the case to the jury on special issues appellant was entitled, at least upon request, to have these several questions of fact submitted separately. By the issue complained of, and the instruction given in connection therewith, the jury was required to answer all of the questions "Yes" or all of them "No"; or if the form of the issue would have authorized an affirmative finding by the jury as to some of the questions embodied in it, and a negative answer to some of them, yet, when told by the instruction accompanying it that their answer must be "Yes" or "No," they were led to believe, and must have understood, that they

were not authorized to find that either the use of intoxicating liquor caused, or contributed to cause, the bodily injuries that resulted in MacKechnie's death, or that the disease of arteriosclerosis or Bright's disease caused, or contributed to cause, such injuries, but that they must either give an affirmative or negative answer to all of those questions of fact. To secure its right to have the questions submitted separately, appellant prepared and requested appropriate special issues to that end. By these issues, which were refused, the jury was called upon to determine and answer separately whether the disease of arteriosclerosis caused, or contributed to cause, the stroke of apoplexy suffered by Edward MacKechnie on the 25th day of October, 1913, the paralysis that followed, and his subsequent death in June, 1916, or whether Bright's disease caused, or contributed to cause, such results. The submission of the issue complained of, and the refusal of the requested special issues to which we have referred, constituted, in our opinion, material and prejudicial error.

[7] Again, the appellant requested the court to instruct the jury as follows:

"You are instructed that if you find and believe that the diseases of MacKechnie, if any, in evidence caused the stroke of apoplexy on October 25, 1913, or if you believe that the injury, if any, received by him (MacKechnie) on September 25, 1913, and such diseases, if any, concurred and co-operated in causing the apoplexy and paralysis and death, then you will answer question No. 2 requested by the plaintiffs 'No.'"

This charge was refused, and its refusal is assigned as error. Question No. 2, referred to in the special charge just quoted, is: Did the bodily injuries of MacKechnie, independently and exclusively of all other causes, immediately, continuously, and wholly disable and prevent him from performing any and every kind of duty pertaining to his occupation and result in his death? Clearly this charge should have been given, or the special issues requested by appellant, and just referred to above, should have been submitted. On the former appeal of this case we were called upon to determine whether or not the refusal of a special charge, embodying the principle of law embraced in the one now under consideration, was error, and we held that it was. We then said: If the diseases referred to caused the stroke of apoplexy, or if the injury received by the assured in the fall and said diseases concurred and co-operated in causing the apoplexy and paralysis, no liability existed; but if the injuries alone caused the apoplexy and paralysis the appellants are liable.

In connection with what we have said above in relation to the special issues requested by appellant and refused, we desire to say that appellant requested the submission of quite

a number of special issues relating to the cause of the bodily injuries claimed to have resulted in the apoplectic stroke, paralysis, and death of Edward MacKechnie, and we must not be understood as holding that all of such issues should have been submitted. It is, of course, only such as would have submitted singly the issues which we have indicated appellant was entitled to have so submitted.

The forty-third assignment of error is that the court erred in not sustaining the objections of the defendants to the opening argument of Judge Hazlewood, counsel for plaintiffs, and not instructing the jury to disregard such argument, all as appears by bill of exception No. 34. The proceedings disclosed by the record, and of which complaint is here made, is regrettable, and doubtless proved injurious to the rights of appellant. We shall not undertake to state all that the record shows occurred. The bill of exception reciting the remarks of counsel, the objections made, and the court's action cover a little over 34 typewritten pages of the transcript, and that recited in appellant's brief cover 4 pages. As disclosed, counsel for appellees in argument to the jury, among other things, said:

"I am going to uncover the act and conduct of some of these men and lay them bare to you, and when you retire from this courtroom I want you to remember these facts, because the poor old woman from the plains of New Mexico, who hasn't a friend, nobody except the lawyers against this mighty corporation, gentlemen, who has its agents—"

At this point counsel for appellant objected to this line of argument, stating that whether Mrs. MacKechnie has any money, or whether she is a poor woman and without friends, was immaterial; that there is no evidence before the jury as to whether Mrs. MacKechnie is in bad circumstances or in good circumstances. The court remarked, "Note that exception," and counsel continued:

"Gentlemen of the jury, did you ever run for anything in your life that didn't sort of pinch or scare or frighten you a little bit? What is the matter with George? (meaning counsel for appellant). What is the matter with these lawyers? Every time we begin to talk about this case as it is, when we begin to crowd them, you will hear them object. This objecting that has been going on here during the trial of this case made me have one of these horrible dreams."

Counsel then related his dream, which was, in substance, that he found himself where there was neither ice nor snow, and Satan was sitting on his throne; that he saw a great string of men, and learned they were lawyers, and that, in order to keep them from disturbing other occupants of the place, chains had been put around their ankles;

that he heard a great commotion, and asked what was wrong; that some one replied, "That is a lawyer, George Wallace, from Dallas, Texas, who is objecting to having chains put on his ankles;" that Satan, after hearing the objections, said, "George lived in Dallas, and practiced law for forty years, and no court ever sustained one of his objections;" and then, with a great outburst of fire, declared, "Well, we will sustain his objection now, and decree that instead of the chains being placed around his feet they shall be placed around his neck, and he shall be required to walk on his head for two million years." After relating this dream, counsel said: "I woke up, and I was wet with perspiration, having gone through with such an ordeal. Gentlemen of the jury, George (referring to appellant's counsel) ought to have something sustained; he ought to be allowed—" Here counsel for appellant interposed with the objection that the effect of counsel's argument now is to criticise counsel for the defendant for having made objections, and stated, in effect, that counsel for plaintiff had no right to criticise counsel for the defendant in pursuing his legal right. The court here again remarked, "Note that exception;" and counsel for plaintiff, addressing the jury, continued: "I will tell you what I will do; he is a fine gentleman, and I will therefore stop criticism, and just say, 'Gentlemen of the jury, you do the criticising.' From this time on, Mr. Sheriff, keep him off of me, and I will say nothing more about him; let the jury determine that question. Let us talk about the case." Counsel for defendant again objected, saying: "Now, your honor, I also want to object to counsel asking the sheriff to keep me off of him, because I have no idea of getting on him, and it is not in his province to criticise my efforts in objecting." The court remarked, "That is your right." Whereupon counsel for the plaintiff, after stating that he did not wish to be misunderstood, and that counsel for the defendant had the right to object, and that nobody says he has not got that right, but that he was not going to concede that counsel for defendant was right and that he was wrong every time, proceeded thus: "I say this, that whenever a man can talk, say all he wants to, and make all sorts of gestures that he wishes to make, when it begins to pinch, and when it begins to hurt, here is the pin that I am going to stick him with, then it is that he begins to run." Counsel for the defendant again objected, and the court remarked: "You make a memorandum of that, Mr. Stenographer, and note that counsel has his exception, and the court gives him his bill, and requests counsel whenever he sees fit and proper, as his duty to his client, and his place at this bar, to make objection." The bill of exceptions shows that the court, some time in the course of counsel's

argument, instructed the jury to disregard and not consider that portion of Judge Hazle-wood's remarks as follows, "Keep Mr. Wallace off of me, and I will not call his name any more;" also the following portion of his remarks, "This poor old woman, without friends and without money." The criticism of the defendant's counsel for making objections to the argument of the plaintiff's counsel, however, does not appear to have been withdrawn, nor the retort that "when it begins to hurt here is the pin that I am going to stick him with, then he begins to run"; nor the remarks, "Did you ever run for anything in your life that didn't sort of pinch or scare or frighten you a little bit? What is the matter with George? What is the matter with these lawyers? Every time we begin to talk about the case as it is, when we begin to crowd them, you will hear them object." These remarks, so far as the record discloses, were not withdrawn, nor counsel rebuked for making them.

The rules for the government of the district court prescribe that counsel shall be required to confine the argument strictly to the evidence and to arguments of opposing counsel. Mere personal criticism by counsel upon each other shall be avoided, and, when indulged in, shall be promptly corrected as a contempt of court. Rule 39 (142 S. W. xx). "The court will not be required to wait for objections to be made when the rules as to arguments are violated; but should they not be noticed and corrected by the court, opposing counsel may ask leave of the court to rise and present his point of objection. But the court shall protect counsel from any unnecessary interruption made on frivolous and unimportant grounds." Rule 41 (142 S. W. xx). Thus it appears that the "duty devolves affirmatively, first, upon counsel to confine the argument strictly to the evidence and to the argument of opposing counsel; second, upon the court, on its own motion, to confine counsel to this line of argument.

[8] If both the counsel who is making the argument and the court shall fail in the discharge of their duty, then the rules give to opposing counsel the privilege, but do not make it his duty, to then present his point of objection. This discretion given to counsel as to whether he will make the objection at the time was doubtless based upon the well-known embarrassments, and often prejudice, which generally attend the interruption of the argument of one counsel by another. Willis & Bro. v. McNeill, 57 Tex. 465. The experience of counsel in the case at bar, which may not be fully reflected in this opinion, is a typical illustration of the embarrassment and the probable prejudice to which a lawyer and his client may be subjected by a violation of the rules mentioned, and the avoidance of which is intended by an observance and enforcement of these rules. It has been well said that the zeal in behalf of their clients or desire for success should never induce counsel to permit themselves to endeavor to obtain a verdict by argument based upon anything other than the facts in the case and the conclusions legitimately deducible from the law applicable to them, and that any other practice should be promptly repressed.

[9] We cannot say that the remarks of counsel in the present case "did not improperly prejudice the jury; we cannot say that they exercised no influence on the jury. If they exercised any, it was an improper one" (Dillingham v. Scales, 78 Tex. 205, 14 S. W. 566), and so far exceeded the bounds of legitimate argument that they alone suffice, it occurs to us, for a reversal of the judgment obtained. They were not based upon any evidence adduced, did not legitimately belong to any proper issue in the case, and could only have the effect of inflaming the minds of the jurors against appellant, and arousing prejudice against it, to the obscuration of the real issues. Solely on account of language no more objectionable than that used in the present case judgments have been reversed. Metropolitan St. Ry. Co. v. Roberts, 142 S. W. 44; Railway Co. v. Scott, 26 S. W. 999.

There are numerous assignments of error that have not been discussed. They have been, however, carefully considered, with the conclusion reached that they point out no reversible error.

For the errors indicated the judgment is reversed and the cause remanded.