## DODD et al. v. BURKETT et al.

### No. 3978.

Court of Civil Appeals of Texas. Beaumont.

March 18, 1942.

Rehearing Denied April 1, 1942.

Strasburger, Price, Holland, Kelton & Miller, of Dallas, and M. M. Feagin and Clem Fain, both of Livingston, for appellants.

**1018**

Manry & Cochran and Campbell & Foreman, all of Livingston, for appellees.

WALKER, Chief Justice.

On the 19th day of November, 1940, there was a collision in Polk county, on highway No. 59, between Gene Archer's car, in which appellee, Levi Burkett, was riding, and Howard Dodd's truck, driven for him by Lee Hopson. This suit was by appellee Burkett, by next friend, against appellants, Dodd and Hopson, the owner and the driver of the truck, for the damages suffered by him in the collision. On the verdict of the jury convicting appellants of the specific acts of negligence charged against them, as proximate causes of the collision, and finding in appellee's favor on all defensive issues, judgment was rendered in favor of appellee against appellants for $8,000, the damages assessed by the jury, from which they have prosecuted their appeal to this court.

We give special issue No. 11, which was answered by the jury in the negative:

"Do you find from a preponderance of the evidence that on the occasion in question Gene Archer failed to keep a proper look-out?

"You will answer this question 'Yes' or 'No.'" We give special issue No. 12, which, under the instructions of the court, was not answered:

"If you have answered the preceding question 'Yes', and only in that event, you will answer the following question:

"Special Issue No. 12:

"Do you find from a preponderance of the evidence that the failure of Gene Archer to keep a proper look-out was not the sole proximate cause of the collision of the truck and car on the occasion in question?"

In the form of special issue No. 11, the jury was asked the following questions, each answered in the negative, except No. 23, answered in the affirmative: Special issue No. 13, whether Gene Archer was driving in the center of the highway; special issue No. 15, whether Gene Archer failed to drive his car on his right hand side of the highway; special issue No. 17, whether Gene Archer failed to yield one-half of the highway to the truck; special issue No. 19, whether Gene Archer drove his car so that some portion of it was on the left of the center of the highway; special issue No. 21, whether Gene Archer drove his car into the side of the fender of the truck; special issue No. 23, whether Gene Archer failed to apply his brakes prior to the collision; special issue No. 25, whether Gene Archer failed to slow down the speed of his car prior to the collision. Each of these questions was followed by a question in the form of special issue No. 12, submitting its specific act as the sole proximate cause of the collision. None of the issues of sole proximate cause was answered by the jury, except No. 24, found not to be the sole proximate cause. The parties concede that special issues Nos. 11, 13, 15, 17, 19, 21, 23 and 25 put the burden of proof on appellants, and that special issue No. 12, and all the other questions submitting the issue of sole proximate cause, put the burden of proof on appellee.

Appellants contend that the burden of proof on special issues Nos. 11, 13, 15, 17, 19, 21, 23 and 25, should have been put on appellee. Their point is that these issues were integral parts of the issue of sole proximate cause. We concede their legal proposition that the general denial raised the issue of sole proximate cause, Horton & Horton v. House, Tex.Com.App., 21 S.W. 2d 984, and that the burden of proof on this issue was on appellee. Hicks v. Brown, Tex.Com.App., 151 S.W.2d 790. On the concession of the parties, supported by authority, the burden of proof on all questions submitting the issue of sole proximate cause was put on appellee, but he did not rest under the burden of showing that he did not commit the specific acts submitted against him by special issues Nos. 11, 13, 15, 17, 19, 21, 23 and 25. Appellants charged these acts against appellee, and rested under the burden of proving them. Had the jury found in appellants' favor, that appellee committed the acts submitted by these questions, then he would have rested under the burden of showing that his specific acts—the acts of his driver in connection with the collision—did not constitute the sole proximate causes of the collision. This point is made clear on the showing that appellants advanced these specific acts against appellee as constituting contributory negligence, and they concede that on that issue they rested under the burden of proof of establishing these acts, and also of showing that each of these acts constituted negligence and a proximate cause of the collision—that on the issue of contributory negligence.

We can see no sound basis in law for submitting to the jury, as constituting sole proximate cause, the act and conduct of the plaintiff, advanced by the defendant as constituting contributory negligence. The defendants had an affirmative submission of their defense arising out of the conduct of the plaintiff and Gene Archer, on the submission of the issue of contributory negligence. The submission of the defendants' negligence and of the plaintiff's contributory negligence constituted an affirmative submission, affirmatively exclusive in its nature, of the acts of the two parties as constituting proximate causes of the basic wrong. This conclusion necessarily follows when the defendant is given a submission of the issue of unavoidable accident. The legal wrong against the plaintiff in submitting his acts—each specific act—both as contributory negligence and as constituting sole proximate cause, lies in giving the defendant a double submission of his affirmative defenses, and on sole proximate cause in shifting the burden of proof to the plaintiff. It is our conclusion that the issue of "sole proximate cause" as with the issue of unavoidable accident, Hicks v. Brown, supra; Orange & N. W. Ry. Co. v. Harris, 127 Tex. 13, 89 S. W.2d 973; Independent Eastern Torpedo Co. v. Carter, Tex.Civ.App., 131 S.W.2d 125; Hankamer v. Roberts Undertaking Co., Tex.Civ.App., 139 S.W.2d 865, must rest on proof of some fact independent of the negligence of the parties involved in the wrongful act.

We overrule appellants' point that the court erred in submitting the issue of "sole proximate cause" on specific acts of appellee, as was done by submitting special issues Nos. 11, 13, 15, 17, 19, 21, 23 and 25. Appellants' proposition is "that the true issue was whether or not a combination of the acts and omissions of Archer on the occasion in question taken together constitutes the sole proximate cause of the collision in question." On this point we quote from appellants' brief: "We will say for the trial court that his method of submission was in accordance with the rule laid down by our Supreme Court in Sproles v. Rosen [126 Tex. 51], 84 S.W.2d 1001, 1003; however our Supreme Court was wrong in that opinion and will doubtless correct it when the matter is properly brought before it again."

We take the following statement from appellants' brief:

"Plaintiff's attorney, in examining the jury panel, repeatedly asked questions indicating that the defendants were indemnified by insurance. For example, juror Barnes was interrogated as follows:

"'Q. Now then, in those questions, I assume the Court will submit a question in this form substantially: "What sum of money, if any, do you find that the plaintiff has suffered by reason of the collision in question." Now, if you saw fit to insert in there fifteen or twenty or thirty or forty thousand dollars, would you put that in there just as quick as you would put in fifteen or twenty or thirty or forty cents, and be governed solely by the law and the evidence in answering that question, regardless of who paid it or whether it was ever paid or anything? Would you answer that according to the law and the evidence and nothing else?'

"Juror Barclay was interrogated as follows:

"'Q. If you are convinced this young man was injured through the negligence of Howard Dodd, through his agent and servant—that is him sitting there on the end—and you thought this young man was entitled to a considerable amount of money, would you put in whatever you thought he might be entitled to, and be governed entirely and solely by the law and the evidence? If you thought he was entitled to twenty thousand dollars, would you put that in as quick as you would 25¢? And you would do that regardless of who paid it or whether it was ever paid? You would put in what you thought under the law and the evidence was fair?'

"Juror Bush was interrogated as follows:

"'Q. If you are convinced this young man is injured seriously, and you thought he was entitled to twenty-five or thirty thousand dollars, would you put that in there as quick as you would twenty-five cents, regardless of who paid it or whether it was ever paid, and be governed solely by the law and the evidence, and nothing else?'

"Juror Crawford was interrogated as follows:

"'Q. If you thought this man was injured through the negligence of the truck driver, and substantially, and you intended to answer a question in keeping with the law and the evidence, would you be questioned by anything in the world, as

to who paid it or whether it would come from? Would you be governed by anything in the world except that?'

"Similar questions were asked jurors Thomas and Duval.

"To this action of the trial court in refusing to instruct attorneys for plaintiff in examining the jury panel not to ask such questions, the defendants duly and timely excepted, and in each instance when plaintiff's attorneys in examining individual jurors asked the questions above referred to, the defendants moved the court to declare a mistrial, which motions were overruled by the Court."

We overrule the contention that the questions asked the jurors indicated to them that appellants were indemnified by insurance. The defendants were Mr. Dodd, the owner of the truck and a wholesale grocer, and Lee Hopson, his truck driver. In answering the questions asked them, the jurors swore that they would be governed solely by the law and the evidence in fixing the amount of damages, if any, awarded by them to the plaintiff. The difference in the presumptive financial rating of the truck owner and his driver afforded a reasonable basis for these questions. Holder v. Martin, Tex.Civ. App., 131 S.W.2d 165. However, such questions on a slightly different state of facts might constitute error.

■ Appellants moved "to quash the jury panel" on the ground that they "had been summoned by mailing postcards to them." The following facts found by the court supported the order overruling the motion to quash:

"On this the 11th day of August, A. D. 1941, came on to be heard defendants' motion to quash the jury panel for the week, and the Court, after hearing said motion and the evidence offered in support thereof, is of the opinion and so finds that the jury for the week was summoned in the regular and customary manner, and that not more than three of the jury panel are absent without being excused by the Court, except those who have moved out of the County, and those who are over-age, and those who are unknown to anyone, and whose names do not appear on the poll tax rolls of Polk County, Texas, and the Court further finds that defendants have made no request of the Court to have any of the absent jurors brought in for service on this week's jury panel, and the Court is of the opinion and so finds that no injury would result to Defendants by overruling said motion, and completing the panel by having additional talesmen summoned by the Sheriff or his Deputies, as provided by Statute.

"It is therefore ordered, adjudged and decreed by the Court that said motion be and the same is hereby in all things overruled."

■ Appellants present the following assignments against the argument of appellee's counsel:

(1) By Mr. Cochran: "I will try not to get out of the record, when Mr. Strasburger was discussing it and making his argument to you Gentlemen we took the bridle off. Not one time did we object to anything he had to say, and you remember at the close of Mr. Campbell's argument he went up to the Court's desk and had a whole bunch of notes made on things he was objecting to as to what Mr. Campbell said.

"Mr. Strasburger: We object to that as being prejudicial argument, I can make as many objections as I want to without him having to prejudice me before the jury. I don't only have the right, but it is my duty.

"Mr. Cochran: I thank you now for making the objection at this time. It is just what I am going to ask you to do. If you have any objections, please say them at the time I say something you think is wrong and let's take it out right there and then and not wait until after the argument."

The court made the following qualification of this bill:

"After the charge had been read to the jury and before any argument by counsel had been made in the case, the Court called all of the counsel in the case before his desk and admonished counsel that no objections to the argument would be considered as having been timely made unless such objections were made at the time the argument complained of was made to the jury. However notwithstanding the foregoing admonition, at the close of the argument of Mr. Ernest Cochran, one of the Attorneys for Plaintiff, Mr. Henry Strasburger, one of the attorneys for defendants, out of the hearing of the jury, objected to the foregoing argument of Mr. Cochran, whereupon the Court immediately instructed the jury not to con-

sider any of the argument quoted in the foregoing Bill of Exception.

"As qualified, the foregoing Bill is approved and order filed as a part of the record in the case."

Any error in the argument complained of was cured by the instruction of the court. We doubt that Mr. Cochran's criticism of appellants' counsel falls within the rule announced by Western Indemnity Co. v. MacKechnie, Tex.Civ.App., 214 S. W. 456.

■ (2) By Mr. Cochran: "I am not only going to try to stay in the record, but I will state further, they have this young man taking down every word I will say, and they are hoping I will say something in the argument that might give them an error to reverse this case on. And they know, Gentlemen of the Jury, they know they have lost the ball game, and they know their only hope is that I have done something wrong, or Mr. Campbell or Mr. Foreman or myself might say something that will give them a reversible error. You remember when Mr. Foreman was testing you Gentlemen on your voir dire examination they had this young man taking down what Mr. Foreman said, and you will remember Mr. Foreman asked him if he would move over and let him get there on the end; and he wrote down every question he asked you. Somebody had to pay for that." The error, if any, in this argument was cured by the court's instructions to disregard it. But in our judgment, this argument was not an appeal to the passions and prejudices of the jury on the ground that appellants were wealthy. Holder v. Martin, supra.

■ (3) By Mr. Cochran: "I say, if you give him the entire $35,000 you can't pay him for the physical pain and suffering he has undergone. If you pay him $35,-000 you can't pay him for the diminished earning capacity and loss of earnings in the past and will have in the future as a result of this collision. And believing, Gentlemen of the jury, that you will write in an amount which will fairly and reasonably compensate that boy, I will not tell you how much to write in, I will not say write in one dollar or one million dollars, but I say, Gentlemen of the jury, if you write in the entire $35,000 you will not write in one penny too much. There is not a man in this court room that would swap places with him for $135,000." The

court instructed the jury not to consider this argument. On the following authorities this argument was not basically erroneous. Rio Grande, E. P. & S. F. R. Co. v. Dupree et al., Tex.Com.App., 55 S.W.2d 522; Southwestern Gas & Electric Co. v. Hutchins, Tex.Civ.App., 68 S. W.2d 1085; Southern Underwriters v. Yocham, Tex.Civ.App., 140 S.W.2d 341; Peden Iron & Steel Co. et al. v. Claflin et al., Tex.Civ.App., 146 S.W.2d 1062.

■ (4) By Judge Fox Campbell: "I will say to you that all of us on our side of the case are just country lawyers, and we were raised here and have been here all our lives. Mr. Strasburger is from Dallas and has had more experience than we will ever have, he is extremely shrewd. You said you would be governed by the law and the evidence and we believe that. And our Senator is quite a dignified young man. True he is a country boy raised here by us, but he has come down with a double-breasted suit with a pretty little handkerchief stuck up here. That is just part of that senatorial dignity he has acquired. You notice that he got his mouth fixed just right and worked his lips in and out. Clem is a good old boy just the same, but he has just practiced a little of that." The court instructed the jury not to consider this argument. It is the law that counsel in his argument should not indulge in personal criticism of opposing counsel. Western Indemnity Co. v. MacKechnie, supra. Senator Fain was a fellow townsman of Judge Campbell, as stated in the argument, "a country boy raised here by us." This argument was in the presence of the court, and manifestly he construed it as nothing more than friendly "kidding" by one friend of another. Certainly there was nothing in this argument to create in the minds of the jury contempt or disrespect for Senator Fain.

■ (5) Judge Fox Campbell: "You take a boy seventeen years old, strong physically and able to do manual labor, and the only way that he can make a living has been destroyed, and taking into consideration his disability in the future to secure employment, if you want to give us every penny we have asked for in this case, $35,000, wouldn't reimburse him. I don't believe there is a man on this jury that would feel that $35,000 could reimburse a man of that age for that kind of an injury. That is up to you all, but I

do say, Gentlemen, I want you, when you write a verdict in this case, to insert an amount so that if you meet him ten or fifteen years from now and he is still a cripple, you will say, I did what I thought was right, and you will know that you have done your duty." The court instructed the jury not to consider this argument, but under the authorities cited supra under argument point 3, the argument was not basically wrong. If erroneous, the error was removed by the court's instruction.

Appellants have filed with us the opinion of the Commission of Appeals, Sec. A, by Judge Few Brewster, in F. A. Smerke v. Office Equipment Co. et al., 158 S.W.2d 302, adopted by the Supreme Court, and not yet published [in State reports]. In this case, Judge Brewster seems to announce the proposition that a group of assignments against the argument of counsel, considered separately, may not constitute error, but when "taken together" may present error; appellants' counsel so argued on the submission of this case. Clearly, to our minds the several assignments against the argument, taken separately, do not constitute error; it is equally clear to us that, when these assignments are taken together, they do not constitute error.

We recognize that, if the argument is error, injury is presumed—that is the law as announced by our Supreme Court—but injury does not follow as a matter of law. Appellants in this case make no assignment that the verdict of the jury on any issue is without support in the evidence. There is no contention made that the evidence was sharply drawn on these issues. A review of appellants' brief, the transcript, and the statement of facts leads to the clear conclusion that appellants were not injured, as against the mandates of the law, by any of the argument assigned as error.

The judgment of the lower court is affirmed.