GUY A. THOMPSON, TRUSTEE FOR INTERNATIONAL GREAT NORTHERN RAILROAD COMPANY V. WALTER ROBBINS

No. A-6201. Decided June 26, 1957.
Rehearing overruled July 24, 1957.
(304 S.W. 2d Series 111.)

*B. R. Reeves* and *Joe N. Davis,* both of Palestine, *Hutcheson, Taliaferro & Hutcheson, McGregor & Sewell* and *Ben G. Sewell,* all of Houston, for petitioner.

*Lutcher C. Johnston,* of Palestine, *Helm, Jones, McDermott & Pletcher, George E. Pletcher, Shirley M. Helm* and *Albert P. Jones,* all of Houston, for respondent.

Mr. Justice Smith delivered the opinion of the Court.

This is an action to recover damages brought under the Federal Employers' Liability Act. 45 U.S.C.A. Sec. 51 et seq. The particular section of the Act with which we are principally concerned is Section 53.[1] Judgment in favor of plaintiff, based primarily on a jury verdict entered by the trial court, was affirmed by the Court of Civil Appeals. 297 S.W. 2d 247. This court granted a writ of error on a petition which asserted four points of error. This court was of the tentative view that the matters presented in Point 2.[2] were erroneously decided by the Court of Civil Appeals. The remaining points present the contention that: (1) the evidence showed as a matter of law that there was no breach of any duty owed to respondent by petitioner, and, as a matter of law, there was no evidence of action-

[1]"Section 53. Contributory negligence; diminution of damages.
"In all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this chapter to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: *Provided,* That no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation of such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee. April 22, 1908, c. 149, Section 3, 35 Stat. 66."

[2]"The error of the Court of Civil Appeals in failing to hold that it was reversible error for the trial court to submit the petitioner's defensive theory of comparative negligence in such a manner as to inform the jury as to the result of its findings on contributory negligence; and in failing to submit Petitioner's requested Instruction No. D on comparative negligence."

able negligence; (2) that the trial court erroneously defined the term "sole proximate cause;" and (3) that the trial court erred in failing to submit petitioner's requested Issue No. A inquiring as to whether the various acts and omissions of the plaintiff, in combination, as inquired about separately in other issues, was not the sole proximate cause of his injuries, if any. We have concluded that the points fail to present reversible error. It follows that the judgments of the trial court and the Court of Civil Appeals must be affirmed.

The evidence most favorable to the verdict supports the findings that the plaintiff's injuries were proximately caused by the primary negligence of petitioner. The jury exonerated respondent, Robbins, from contributory negligence.

The parties will hereafter be referred to and designated as in the trial court.

Plaintiff worked for the defendant as a brakeman. At the time of the accident in question plaintiff was 56 years of age and had been railroading since 1917. Plaintiff was notified about an hour and a half in advance that he was to be a member of a crew on an extra west freight train on May 23, 1954, the date of the accident. The train was "called" for 1:30 p.m. Plaintiff's pay started at 1:15p.m. Plaintiff went in advance of that hour to the depot and signed the Federal Rest Sheet which indicated the length of time that he had been off duty; the evidence shows that it had long been the custom, in the Palestine yards of defendant where this accident occurred, for members of the crew, and particularly the conductor and the trainmen, including the brakemen, to go to the caboose of the train for which they had been called to duty for road service, while the train was being made up, and that the defendant, its agents and servants, including the switching crew or crews working in the yards and making up the trains, knew of such long-standing custom; that on the day in question, plaintiff, after signing the rest sheet, went out into the yards and located his caboose, which was situated on South 3 track; and he immediately entered the caboose. Some cars were attached to the caboose, but he did not know whether the train was completely made up, and he knew that the caboose might be moved.

It is in evidence that it was good railroading to arrive at the caboose at the time he did; that plaintiff was assigned the job of Flagman, and that as such Flagman, plaintiff began prompt performance of his duties which consisted chiefly in

getting out markers to indicate the rear of the train and to check the supplies to see that he had flagging equipment and the proper material to work with; that while he was in the act of picking up two markers off the floor, the caboose and cars ahead were struck with a great deal of force by a moving "cut of cars" being switched by the defendant's switching crew; that the blow caused plaintiff to be thrown or knocked a distance of some twenty feet; that the "cut of cars" struck the caboose, and, although it was customary for the switchmen to give warning of coupling movements, the switching crew failed to give such warning; the testimony shows that plaintiff was standing with his legs wide apart, and that he would not have been knocked down if the coupling was made at no greater speed than four miles per hour; that the Railroad Rules provided that couplings should not be made at a speed of more than four miles an hour, and that the "cut of cars" would have had to be going at least ten miles an hour to knock a man twenty feet. Other evidence shows that there was no rule requiring trainmen to sign in at any specific time before the scheduled departure of the train. Sometimes plaintiff would sign in more than forty-five minutes before, and sometimes just at the start of the period of preparatory time before departure; plaintiff had never been told by anyone to wait until the train was ready to go before entering the caboose and beginning his preparatory work; that it had never been customary to find out whether the train had been completely made up before entering the caboose because the employees were protected by Rule 103A2, which provides "When coupling or shoving cars, take proper precaution to prevent damage or fouling of other tracks by stretching, coupling and setting sufficient hand brakes, make coupling at a speed of not more than four miles per hour." Plaintiff was under no duty to look out windows or get on top of the caboose to ascertain whether a switching movement was being made; he was standing with a stance that would protect him against a four-mile per hour blow. He was braced at the time of the blow.

In response to special issues the jury found that plaintiff's injuries were proximately caused by the primary negligence of defendant and that the plaintiff was performing duties in the course of his employment at the time he sustained his injuries. The jury further found: (1) that the defendant knew of the custom of trainmen, including brakemen, entering the caboose before the train was made up, and that the switching crew handling the "cut of cars" should have reasonably anticipated that a member of the train crew might be in the caboose at the time and on the occasion in question; (2) that the standing cars

to which the caboose was attached was struck with unusual force and violence by the moving cut of cars; (3) that the "cut of cars" was permitted to strike the cars to which the caboose was attached at a rate of speed in excess of that at which a person of ordinary prudence in the exercise of ordinary care would have permitted them to strike under the same or similar circumstances; (4) that the lead car of the rolling "cut of cars" was equipped with a hand brake adequate to control the speed of such cut of cars; (5) that the failure to place a switchman on the lead car of the rolling cut of cars was negligence and a proximate cause of the accident and subsequent injuries, and (6) that the "cut of cars" which were being moved was kicked by the locomotive, and that this act as well as all the others above enumerated constituted negligence on the part of the defendant, and that each act of negligence was a proximate cause of the occurrence in question.

The jury in answering special issues Nos. 17 to 36, inclusive, exonerated plaintiff of all acts of contributory negligence charged against plaintiff. The jury found (1) that plaintiff was not negligent in failing to give notice to any member of the switching crew of his intentions to enter the caboose when he did or at any time before his injury; (2) that he was not negligent in assuming that the train had been made up and that switching operations had been completed before he entered the caboose; (3) that he was not negligent in failing to make any inquiry or investigation to find out if the train had been made up and switching operations completed before entering the caboose; (4) and that (3) above was not the sole proximate cause; (5) that Robbins did not fail to keep such a lookout for cars being switched in making up the train in question as would have been kept by a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances; (6) that plaintiff did not fail to properly brace himself in the caboose; (7) although the jury found that plaintiff did not fail to brace himself properly, it found in answer to Special Issue No. 27A that failure to properly brace himself was not the sole proximate cause of the occurrence; (8) that plaintiff did not fail to exercise ordinary care for his own safety; (9) that he did not violate defendant's Rule which reads:

"'Constant presence of mind to insure safety to themselves and others is the primary duty of all employees and they must exercise care to avoid injury to themselves or others * * *. When employees are on or near tracks, they must expect the movement

of trains, engines or cars at any time, on any track, in either direction.' "

(10) that entering the caboose at the time he did without giving notice was not negligence; (11) that entry without notice was not the sole proximate cause of the occurrence; (12) that the act of plaintiff in entering the caboose when he did without first making some inquiry or investigation to find out if switching operations had been completed did not constitute negligence, and (13) that such act was not the sole proximate cause of the occurrence.

Defendant contends that in the absence of knowledge that an employee in a railroad switch yard is in a position of danger and is oblivious to such danger, a switch crew at work in the yard is under no duty to warn him of the impending switching operations or to take steps to protect him. Defendant reasons that if there was no duty to warn plaintiff, then there was no duty owed him to regulate the speed of the cars for his protection. With this we cannot agree. Defendant cites the case of Ottley v. St. Louis—S. F. Ry. Co., 1950, 360 Mo. 1189, 232 S.W. 2d 966, 974, cert. den., 340 U.S. 948, 95 L. Ed. 683, 71 Sup. Ct. 533, in support of its position. That case holds that granting the movement was unusual and that the cars were struck with unnecessary force, such act was not negligence as to one not entitled to any warning or notice. The court said in part:

"* * * Obviously, the extent of the momentum necessary for the kick in of a particular movement can only be estimated by the members of the switch crew. While the movement may have been 'unusual, and not one made every day,' such a movement was not negligence as to an employee who was not entitled to notice and whose duty was to assure himself that the cut was not coming in *at all.*"

This holding is not applicable to the case at bar. To hold that defendant owed no duty to plaintiff would be equivalent to holding that as a matter of law plaintiff was either a trespasser or licensee, in which event, of course, he could not recover. On the other hand, if plaintiff was properly in the caboose, pursuant to a known custom, then the persence of the plaintiff could have been anticipated by the switching crew. This being true, the fact that the switching crew may not have had actual knowledge of the presence of plaintiff in the caboose is not controlling. Plaintiff was in a position where he might reasonably have been

expected to be and was doing the work required of him by his employer. The evidence would warrant the trier of the facts in concluding that the duties required of him could not have been discharged in the fifteen minutes preparatory time allowed. In addition to the duties in the caboose, and the inspection of the hand brakes on some fifty cars, it required some time to walk from the depot to the caboose. The custom to report early obviously was necessary to avoid delay in the departure of trains.

■ The defendant owed a duty to the plaintiff to exercise ordinary care. Plaintiff's presence in the caboose was lawful. He was under no duty or obligation to warn the switching crew of his presence. He was there pursuant to a known custom. The defendant has, under the evidence and findings of the jury, violated the duty owed the plaintiff, and has failed to show facts that would relieve it from the duty of anticipating the presence of plaintiff in the caboose at the time of the accident. See Dooley v. Missouri, Kansas & Texas Railway Company of Texas, 50 Texas Civ. App. 298, 110 S.W. 135, no writ history; St. Louis Southwestern Railway Company of Texas v. Kennemore, Texas Civ. App., 81 S.W. 802, er. ref. Defendant certainly owed the duty to plaintiff not to strike the cars to which the caboose was attached with unusual force, and not to permit the "cut of cars" to strike the cars to which the caboose was attached at a rate of speed in excess of the four miles per hour provided for in Rule 103-A2, and not permit a speed in excess of that at which a person of ordinary prudence, in the exercise of ordinary care, would have permitted under the same or similar circumstances. In view of Rule 103-A2 there was no reason for plaintiff to suspect that the coupling of the train would be made at an excessive rate of speed. The defendant has violated a duty owing from it to the plaintiff, and, in the absence of contributory negligence, the judgment of the trial court must be sustained.

This brings us to the question raised by Point 2, supra, which is to the effect that the trial court erred by submitting the defendant's theory of comparative negligence in such a manner as to inform the jury as to the result of its findings on contributory negligence; and in failing to submit defendant's requested Instruction No. D, on comparative negligence.

The defendant contends that Special Issue No. 38 and the instructions given in connection therewith was prejudicial, in that the jury was informed and advised as to the effect of its answers to the issues relating to plaintiff's contributory negli-

gence, and that the form of submission caused the jury to answer all issues on contributory negligence adversely to defendant. Defendant further contends that the proper inquiry is one which will determine the percentage to which the plaintiff's contributory negligence, if any, bears to the entire negligence of plaintiff and defendant, and not the amount of money to be deducted from the damages, if any, found in answer to Special Issue No. 37, the damage issue. Special Issue No. 38 reads as follows:

"What amount of money do you find from a preponderance of the evidence should be deducted from the amount of damages, if any, which you have found in answer to Special Issue No. 37 because of negligence, if any, of the plaintiff, Walter Robbins, proximately causing his injury?

"Answer by stating the amount, if any, in dollars and cents which should be deducted.

"ANSWER: _____.

"You are instructed in connection with the foregoing Special Issue No. 38 that in the event you have found the plaintiff was negligent in any respect in Special Issues Nos. 17, 19, 21, 23, 26, 28, 31, 33 or 35 which negligence was a proximate cause of the occurence in question then in determining the answer to Special Issue No. 38 the amount shall be arrived at by taking into consideration the percentage of contributory negligence of the plaintiff Walter Robbins, if any, as the contributory negligence applies to the entire negligence, if any, of both plaintiff and defendant involved in the occurrence made the basis of this suit."

Defendant not only objected to the submission of issue No. 38, but, in addition thereto, requested the trial court to submit, in lieu of Special Issue No. 38 and the accompanying instruction, the following:

### "DEFENDANT'S SPECIAL REQUESTED INSTRUCTION D

"If in answer to any of the special issues contained in this charge you have found that the plaintiff, Walter Robbins, was negligent or failed to exercise ordinary care, which was a proximate cause, and if you have also found in answer to any of the special issues that any of the switching crew were negligent or failed to exercise ordinary care, which was a proximate cause,

then what percent do you find from a preponderance of the evidence does the negligence of the plaintiff bear to the entire negligence, if any, of both the plaintiff and the switching crew.

"Answer by stating the percentage as between 0 and 100.

"Answer_____."

■ Defendant agrees that this being a railroad employee personal injury case contributory negligence was no defense, but contends that the principle of comparative negligence was applicable. This being its position, it further contends that the Federal Employers' Liability Act, 45 U.S.C.A., supra, merely prescribes the substantive rights of the parties, and that all Federal Employers' Liability Act cases are to be tried in accordance with our own rules of civil procedure, and not the Federal rules. The Federal Employers' Liability Act, 45 U.S.C.A., supra, as well as the Texas Act, Article 6440, Vernon's Annotated Civil Statutes, both specifically provide that the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee. We agree with the defendant that the Texas Rules of Civil Procedure control. The plaintiff invoked the jurisdiction of the state courts and the case should be tried as any other suit for damages is tried in the state courts so far as procedural matters are concerned. Therefore, in view of our policy that all special issues should be framed in such form as to not inform the jury of the effect of its answers, we believe that issue No. 38 should have been framed so as to inquire of the jury as to what per cent the negligence of the plaintiff bore to the entire negligence, if any, of both the plaintiff and the defendant. Requested instruction D, refused by the trial court, coupled with the defendant's objections to the issue submitted, was sufficient to point up the vice of Special Issue No. 38, as submitted, and the trial court should have responded by submitting the defense of comparative negligence in a special issue as follows:

"If in answer to any of the special issues contained in this charge you have found that the plaintiff, Walter Robbins, was negligent or failed to exercise ordinary care, which was a proximate cause, and if you have also found in answer to any of the special issues that any of the switching crew were negligent or failed to exercise ordinary care, which was a proximate cause, then answer the following special issue:

"SPECIAL ISSUE NO. 38

"What per cent do you find from a preponderance of the evidence does the negligence of the plaintiff bear to the entire negligence of both the plaintiff and the switching crew of the defendant?

"Answer by stating the percentage.

"Answer_____."

■ The plaintiff argues that the very wording of the Act contemplates that the attention of the jury must in some manner be apprised of the substantive right of the defendant to have the amount of damages diminished in proportion to the negligence attributable to the plaintiff, and that the inquiry as to the amount of money to be deducted from the amount of damages no more informs the jury as to the effect of its findings than the suggested issue which inquires as to the per cent the negligence of the plaintiff bears to the entire negligence of both plaintiff and defendant. Keeping in mind our rules and that we are to be governed by such procedural rules, we can readily see that the issue as submitted informs the jury that some amount of money is to be deducted from the damages as found in answer to Special Issue No. 37, in the event the plaintiff has been found guilty of contributory negligence, whereas, the suggested issue does not necessarily do so. In actions under Chapter 43, U.S.C.A., supra, we have two primary issues to determine: (a) the question of the employer's negligence and its casual relation to the injury, and (b) the question of the employee's contributory negligence to be determined on a comparative basis. See Wood v. Chicago & E. R. Co., 215 Ind. 467, 18 N.E. 2d 772, rehearing denied, 215 Ind. 467, 20 N.E. 2d 642; Norfolk, etc. R. Co. v. Earnest, Va. 1913, 229 U.S. 114, 33 Sup. Ct. 654, 57 L. Ed. 1096. Of course, under this chapter, the employee's contributory negligence must be the sole proximate cause of his injury or death to bar completely the recovery of damages therefor.

While we have held that the trial court erroneously submitted issue of comparative negligence, we hold that under the record in this case the error was harmless. The jury has exonerated the plaintiff from contributory negligence. While we recognize the rule that the answers of the jury cannot be used to support a contention that the comparative negligence issue was properly submitted, and that it is the condition at the time

of submission of the case to the jury, and not after verdict, that controls the submission, we cannot agree with the defendant in its contention that the jury would probably have answered the issues of contributory negligence adversely to plaintiff had the issue been submitted on the percentage theory as requested. In view of the evidence in this case, and since such evidence overwhelmingly preponderates in favor of the jury answers to all contributory negligence issues as well as sole proximate cause issues, we cannot believe that the form of issue No. 38 caused the jury to return an improper verdict and the trial court to render an improper judgment based on that verdict. We, therefore, apply ourt State Rules, which provide that the error to be reversible error, must be one that "probably did cause the rendition of an improper judgment in the case." See Rules 434 and 503, Texas Rules of Civil Procedure; Lumbermen's Lloyds v. Loper et al., 153 Texas 404, 269 S.W. 2d 367; Owen Development Company v. Roy Calvert et al., 157 Texas 212, 302 S.W. 2d 640. Rules 434 and 503, supra, provide that no judgment shall be reversed on appeal on the ground that the trial court has committed an *error of law* in the course of the trial unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant-petitioner as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case.

■ Defendant next contends that the definition of the term "sole proximate cause" as given in the court's charge was too restrictive, in that it limited the jury to a consideration as to whether a separate act or event alone constituted the sole proximate cause, whereas, it was entitled to have the jury to consider whether a consideration of two or more acts or omissions of the plaintiff was the sole proximate cause.

It is well settled that special issues are to be submitted separately and distinctly and not generally or in groups or combinations. See Fox v. Dallas Hotel Co., 111 Texas 461, 240 S.W. 517. In that case the trial court submitted an issue inquiring whether Fox was guilty of contributory negligence in his conduct in, around, and about the elevator shaft prior to or at the time of his injury. Objection was made by the defendant on the ground the question submitted did not present separately each of the grounds of contributory negligence pleaded, but the objection was overruled. This Court reversed, holding the submission erroneous. It was held in the case of Sproles v. Rosen, 126 Texas 51, 84 S.W. 2d 1001, that several acts claimed to be the sole proximate cause should not be submitted in one issue.

Such holding was quoted with approval by this Court in the case of Hicks v. Brown, 1941, 136 Texas 399, 151 S.W. 2d 790.

The issues in our case were submitted separately, and the true issues of contributory negligence and sole proximate cause were properly submitted. See A.B.C. Storage & Moving Company v. Herron, Texas Civ. App., 138 S.W. 2d 211, er. dism.; Dodd v. Burkett, Texas Civ. App., 160 S.W. 2d 1016, ref. w.o.m.

The judgments of the trial court and the Court of Civil Appeals are affirmed.

Opinion delivered June 26, 1957.

Rehearing overruled July 24, 1957.