J. W. CROWDER et al., Appellants,

v.

N. H. LACKEY et al., Appellees.

No. 3511.

Court of Civil Appeals of Texas.

Waco.

Jan. 23, 1958.

Rehearing Denied Feb. 27, 1958.

Louis W. Graves, Jr., James R. Cornish, Houston, for appellant.

Lanier, Talbert, Giessel & Cutherell, Fulmer, Fairchild & Barnett, Nacogdoches, for appellee.

TIREY, Justice.

This is a suit for rentals grounded on an oral contract. At the conclusion of the evidence the court overruled appellants' amended motion for an instructed verdict and submitted four issues to the jury. Absent the burden of proof clause, each issue is substantially:

1. Do you find that in negotiations between F. L. Riddle and T. N. Williams on or about October 4, 1951, F. L. Riddle agreed that the defendants J. W. Crowder and others would pay the monthly rentals to Lackey and Williams on their equipment used on the job, in the event no profit was made on the job? To which the jury answered "We do."

2. Do you find that it was agreed between T. N. Williams and F. L. Riddle in their negotiations on or about October 4, 1951, that Lackey and Williams would share in the losses as well as the profits on the job in question? To which the jury answered "we do not."

3. Do you find that J. W. Crowder, on or about December 10, 1951, informed T. N. Williams in effect that if Williams expected money other than out of the monthly estimates that he had better move his equipment elsewhere? To which the jury answered "We do not."

4. Do you find that Williams and Lackey took their equipment off of the job on or about March 5, 1952 with the consent of F. L. Riddle or J. W. Crowder? To which the jury answered "We do."

The court overruled defendants' amended motion for judgment non obstante veredicto and granted plaintiffs' motion for judgment and thereafter granted plaintiffs' motion to amend the judgment nunc pro tunc. The final judgment entered by the court followed the verdict of the jury and decreed that plaintiff, N. H. Lackey, recover from J. W. Crowder, F. L. Riddle, S. C. Hill, v. Creech and C. W. McLenan individually, jointly and severally, doing business as J. W. Crowder and Associates, for the sum of $16,056.60, with interest thereon from date of Judgment until paid at the rate of 6% per annum, together with all costs. It further decreed that the defendants and cross plaintiffs take nothing by reason of their cross action by reason of N. H. Lackey and R. N. Williams, d/b/a Lackey and Williams Construction Company, to all of which the defendants excepted and dully perfected their appeal to the First Judicial District, and the cause is here on transfer order from our Supreme Court.

Appellants' 10th point is: "This cause should be reversed for failure of the trial court to sustain Ground 4 of appellees' motion for an instructed verdict, being in substance that the contract of the parties was, at the request of the appellees reduced to writing in the form of the letter agreement of December 28, 1951, which letter agreement was accepted and acted upon by appellees."

A statement is necessary.

Appellees went to trial on their first amended original petition. Pertinent to

this discussion, they alleged substantially that in September 1951 the City of Gladewater had advertised to let a contract for the building of a dam for city water purposes in the City of Gladewater, and that plaintiffs and defendants made the following oral agreement and contract:

"Defendants and the plaintiffs mutually agreed that the defendants would rent certain heavy power equipment from plaintiffs as follows:

"One model HD14 Tractor with Garwood Hydraulic Scraper beginning on October 11, 1951 to March 5, 1952, at the rate of $1,000.00 per month.

"One model HD14 Tractor with Le-Tourneau Power Unit and Woolridge Cable Control Scraper beginning on October 11, 1952 to March 5, 1952, at the rate of $1,000.00 per month.

"One Model HD14 Tractor with Woolridge Dozer Blade beginning October 12, 1951 to March 5, 1952, at the rate of $1,000 per month.

"One WK Tractor and Baker Bulldozer beginning on October 12, 1951 to March 5, 1952, at the rate of $400.00 per month.

"One GI Chevrolet Combination Winch Truck and Haul Truck with Float, one Lincoln Welding Machine mounted on two wheel trailer beginning October 12, 1951 to March 5, 1952, at the rate of $150.00 per month.

"One 1951 Ford Pickup Truck beginning October 9, 1951, to March 5, 1952 at the rate of $125.00 per month.

"One 1949 Ford Club Coupe beginning October 9, 1951, to March 5, 1952, at the rate of $125.00 per month.

"Under such agreement the following performance was made by plaintiffs: That thereafter the defendants rented from plaintiffs for 145 days beginning on October 11, 1951, March 5, 1952, one model HD14 Tractor with Garwood Hydraulic Scraper for the total amount of $4,833.35;

"That thereafter the defendants rented from plaintiffs for 145 days beginning on October 11, 1951 to March 5, 1952, one model HD14 Tractor with LeTourneau Power Unit and Woolridge Cable Control Scraper for the total amount of $4,833.35;

"That thereafter the defendants rented from plaintiffs for 144 days beginning on October 12, 1951 to March 5, 1952, one model HD14 Tractor with Woolridge Dozer Blade for the total amount of $4,800.01;

"That thereafter the defendants rented from plaintiffs for 144 days beginning on October 12, 1951 to March 5, 1952, one WK tractor and Baker Bulldozer for the total amount of $1,919.96;

"That thereafter the defendants rented from plaintiffs for 144 days beginning on October 12, 1951 to March 5, 1952, one GI Chevrolet Combination Winch Truck and Haul Truck with Float, one Lincoln welding machine mounted on two wheel trailer for the total amount of $720.00;

"That thereafter the defendants rented from plaintiffs for 147 days beginning on October 9, 1951 to March 5, 1952, one 1951 Ford Pickup Truck for the total amount of $608.32;

"That thereafter the defendants rented from plaintiffs for 147 days beginning on October 9, 1951 to March 5, 1952, one 1949 Ford Club Coupe for the total amount of $608.32;

"The total amount due on the above mentioned machinery was Eighteen Thousand Three Hundred Twenty Three & Thirty One/100 ($18,323.31), amount paid by defendants to plaintiffs is Two Thousand Two Hundred Sixty Dollars & No/100 ($2,260.00), amount

due Sixteen Thousand and Sixty Three & Thirty One/100 ($16,063.31)."

Appellants went to trial on their amended answer, and pertinent to this discussion it consists of a general denial. For further answer they specially pleaded "that defendants and plaintiffs mutually agreed that the defendants would rent certain heavy power equipment from plaintiffs, and the allegations of the fourth unnumbered paragraph of plaintiffs' first amended original petition that under such agreement defendants rented the equipment described therein." For further answer they pleaded:

" * * * that on or about October 6, 1951, plaintiffs and defendants entered into an oral contract of joint venture for the performance of excavation work on Lake Gladewater, Gladewater, Texas, which contract in all its provisions, was identically the same as that later reduced to writing by virtue of a letter agreement dated December 28, 1951, hereinafter more specifically pleaded. Work in the performance of such contract was begun on or about October 12, 1951. Some time prior to December 28, 1951, the plaintiffs requested the defendants to reduce the contract to written form, and this was reduced to written form in the nature of a letter agreement dated December 28, 1951, as follows:

" 'December 28, 1951

" 'Lackeys & Williams Construction Co.,
Gladewater, Texas

" 'Gentlemen:

" 'Confirming our previous conversation regarding contract on Gladewater dam and reservoir to be built on a percentage basis by J. W. Crowder & Associates and Lackeys & Williams, both partnerships.
" 'J. W. Crowder & Associates to receive 75% of net profits, Lackeys & Williams 25% of net profit. Both parties to receive rental for equipment furnished at the rate listed below:

| | |
|---|---:|
| " 'One model HD14 Tractor with Garwood Hydraulic Scraper | $1,000.00 |
| " 'One model HD14 Tractor with LeTourneau Power Unit and Woolridge Cable Control Scraper | 1,000.00 |
| " 'One Model HD14 Tractor with Woolridge Dozer Blade | 1,000.00 |
| " 'One WD Tractor and Baker Bulldozer | 400.00 |
| " 'One GI Chevrolet Combination Winch Truck and Haul Truck with Float, one Lincoln welding machine mounted on two wheel trailer | 150.00 |
| " 'One 1951 Ford pickup truck | 125.00 |
| " 'One 1949 Ford Club Coupe | 125.00 |

" 'J. W. Crowder & Associates to finance job payrolls, current expenses including salaries to Lackey & Williams of $100 per week.
" 'It is further agreed that money must be earned on this project to pay rentals and rentals to be proportioned to equipment furnished by each company.
" 'We have reason to believe that a nice profit will be earned from this job sufficient to pay all rentals plus.
" 'Very truly yours,
" 'J. W. Crowder & Associates
"'JWC/nc'

"The hereinabove quoted letter agreement was signed by J. W. Crowder on behalf of the defendants, and the original thereof was delivered to the plaintiffs and is now in their custody. Notice is hereby given the plaintiffs that upon the trial of this cause they will be called upon to produce the original of such letter agreement, and if the same is not produced, its contents will be proved by other testimony.

"IV.

"Such letter agreement was mailed to the plaintiffs and was received by the plaintiffs on or about December 29, 1951. The same was assented to, accepted and acquiesced in by plaintiffs, and the plaintiffs acted under such letter agreement until they breached the entire agreement, as hereinafter alleged, on or about March 5, 1952.

"V.

"The defendants show that the plaintiffs, and each of them, are estopped to deny that such letter agreement constituted the complete contract between the parties, and especially that it constituted an agreement, the legal effect of which was that the money must be

earned on the project prior to the payment of any rentals, either to the plaintiffs for their equipment on the one hand, or the defendants as rental for their equipment on the other hand.

"VI.

"The plaintiffs are further estopped to deny that such letter agreement constituted the contract between the parties and specifically an agreement to the effect that the money must be earned on the project to pay rentals before any rentals were due, either to the plaintiffs or to the defendants, because the defendants relied upon such contractual clause of the letter, in that they had any notice or knowledge that the plaintiffs would claim rental for their equipment, then these defendants would not have permitted the plaintiffs' equipment to remain on the job and would not have used the plaintiffs' equipment."

Defendants further pleaded estoppel more specifically and also abandonment of the contract by plaintiffs and they prayed for appropriate relief.

Evidence was tendered to the effect that appellees went to work under their oral contract, which they pleaded, and that after they had been working for some months on the project defendants had paid them on their rentals approximately $1,500; that defendants defaulted in the payment of the balance of the rentals due and that it became necessary for plaintiffs to undertake to borrow money with which to pay their bills and meet the payments on their equipment in order that they might carry on; that this they were unable to do and plaintiffs then requested defendants to reduce the oral contract to writing so that they would have something definite to present to the bank on which to obtain a loan, and that defendants, in order to comply with this request, wrote the letter dated December 28, 1951, which was set out in defendants' pleading.

It is the contention of the appellants that the testimony showed that appellees accepted the letter evidencing the agreement between the parties and took the same to the bank and by virtue of the contents of said letter tried to negotiate a loan thereon; that appellees kept the letter in their possession and never returned it to appellants, and that owing to the fact that appellees did accept the letter and try to borrow money thereon and never returned the letter agreement to the appellants, that such letter contains the agreement between the parties and that appellees are estopped to deny the fact that they are precluded from any recovery against the appellants by virtue of the contents of the letter agreement, and because the evidence is undisputed that there was a loss and no profits accruing to the appellants.

Appellees further contend in effect that they are entitled to an instructed verdict under all of the undisputed facts and surrounding circumstances due to the fact that appellees retained the letter in their possession from the time it was received by them through the United States mails, and that appellees introduced the letter in evidence on the trial of the case without any restrictions or limitations whatsoever and are bound thereby.

In Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517, our Supreme Court held in effect that each party to a law suit has the right to have all fact issues submitted to and determined by the jury which the parties have pleaded.

In Wichita Falls & Okla. Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79, our Supreme Court again held that in a case tried before a jury, each litigant has the right to have the jury pass on the essential or ultimate issues of fact raised by the pleadings and evidence. See also Thompson v. Robbins, Tex., 304 S.W.2d 111, point 6, p. 118.

The foregoing principles were embodied in our new Rules of Civil Procedure, and

this matter is now controlled by Rules 277 and 279, T.R.C.P.

Now bearing in mind the letter dated December 28, 1951, written by appellants to the appellees, and the further fact that such letter was pleaded defensively by appellants as evidencing the contract between the parties, and bearing in mind that such letter was tendered in evidence by appellees without any restrictions, and bearing in mind the further fact that evidence was tendered to the effect that appellants made no profits on the contract, did the trial court, in the four issues which we have substantially quoted in the opinion, submit the appellants' defense to the appellees' cause of action? We think the answer is "No."

In 17 Tex.Jur. 928, 929, Sec. 419, we find this statement of the rule: "As a general rule documentary evidence is held to be conclusive against the party introducing it; he may not impeach it; nor will he be permitted to accept a part of it which is in his favor and repudiate another part which is opposed to his claim or defense."

In 32 C.J.S. Evidence § 1040d, pp. 1113, 1114, we find this statement of the rule: "It has been said to be unquestionably the general rule that a party who introduces documentary evidence to support his contention vouches for its integrity and is conclusively bound thereby. A more common statement is to the effect that a party introducing documentary evidence is, at least if he introduces it without qualification or reservation, bound thereby, for all purposes, and cannot impeach it, but vouches for its accuracy so far as the issue on which it bears is concerned; * * *."

In 10 R.C.L. 1098, par. 389, we find this statement: "As a general rule documentary evidence is held to be conclusive against the party introducing it. He may not impeach it and he will not be permitted to accept a part which is in his favor and repudiate another part which is opposed to his claim or defense. And this applies

as well to documents forming a part of the record of a cause as to other documents."

In 17 Ann.Cas., p. 381, it is said: "As a general rule documentary evidence is held to be conclusive against the party introducing it. He may not impeach it, and he will not be permitted to accept a part which is in his favor and repudiate another part which is opposed to his claim or defense."

Our Texas courts have repeatedly followed the foregoing principles of law. See Lock v. Morse, Tex.Civ.App., 287 S.W.2d 500 (n. r. e.); also for collation of authorities on the foregoing rule see 16A Tex.Dig., Evidence, 

██ Notwithstanding the foregoing rule of law, we cannot say as a matter of law, from this record as a whole, that appellees accepted the letter dated December 28, 1951 as evidencing the contract agreement between them and appellants, but we do think the evidence tendered such issue as a fact issue for the jury's determination, and that under the pleadings and the evidence the trial court failed to submit one of the controlling and ultimate issues of fact to be adjudicated. Owing to the fact that we think this case has not been fully developed and because the court's charge did not accurately submit appellants' ultimate defense as herein pointed out, it is our view that equity and justice require us to reverse and remand this cause for a new trial.

Because we feel that the cause has not been fully developed and will have to be remanded, we refrain from further comment on the testimony, and likewise refrain from discussing the other assignments of error, for the reason that they should pass out of the case on another trial.

We direct the trial court to give both parties the right to file such amended pleadings as they desire.

Accordingly, the judgment of the trial court is reversed and the cause is remanded.