**DALLAS TRANSIT COMPANY, Appellant,**

v.

**Collie COLLIER, Appellee.**

No. 15436.

Court of Civil Appeals of Texas.

Dallas.

Oct. 10, 1958.

Turner, White, Atwood, McLane & Francis, Dallas, for appellant.

Speck, Johnson, Carlton & Alexander, Dallas, for appellee.

DIXON, Chief Justice.

Appellee Collie Collier sued for damages because of personal injuries sustained in a collision between a truck and a bus owned by appellant Dallas Transit Company, a corporation. After return of a jury verdict favorable to appellee judgment was rendered for $34,838. This included $2,750 in favor of Fidelity & Casualty Company of New York, which company, as intervenor, had asserted subrogation rights for money paid by intervenor in settlement of appellee's workmen's compensation claim.

In its point on appeal No. 1(a) appellant alleges misconduct on the part of the jury in that the members of the jury discussed attorneys' fees in connection with the issue on damages. The record discloses that there is a conflict in the testimony of the jurors on this point.

Mrs. Ingles, one of the jurors, testified that the subject was mentioned twice before the jury reached a final agreement as to the amount of the damages. During the first discussions she reminded the jurors that

they should not mention attorney's fees, so they dropped the subject; but it was later brought up again. In their deliberations concerning the various elements of damages it had at first been suggested that a finding be based on a five years' loss of future earnings, but they finally agreed on ten years' loss.

Another juror, Mrs. Ruggles, testified that "one time there was something said, just wondered how much attorneys would get out of the case; it was not applied to this case, is the way I understood it." Miss Murray, a juror, when asked whether there was any discussion or mention of attorneys' fees, testified "There was mention of it. I don't think it was discussed. There was mention of it." She further testified that one or two or maybe even three people said the jury could not discuss the subject and the matter was not thereafter mentioned. Her recollection was that the final amount, at least as to one of the elements of damages, was lowered not raised from the first amount suggested. Mrs. Foerster, also a juror, when asked if there was any discussion of attorney's fees testified "There was not. * * * There was not. I don't remember. * * * I didn't hear it * * * I think I would have remembered it if I had heard it:" Other jurors testified but they gave no testimony on this point.

■ In the face of this conflict in the testimony as to whether the alleged act of misconduct occurred we are bound by the implied finding of the court that it did not occur. McCarthy Oil & Gas Corp. v. Cunningham, Tex.Civ.App., 255 S.W.2d 368, 372; City of Dallas v. Hutchins, Tex.Civ. App., 226 S.W.2d 155. In any event we cannot say that from the evidence it reasonably appears that injury probably resulted to appellant. Rule 327, Texas Rules of Civil Procedure.

■ In point 1(b) appellant alleges misconduct in that the jury framed its own issue on liability as if a general charge had been submitted, then answered other issues in conformity with their agreement. But here again appellant's contention finds insufficient support in the testimony of the jurors. There was testimony from Mrs. Ingles that at the beginning of the jury's deliberations one of the jurors asked, "Are we all agreed that it was the bus driver's fault?" All the jurors agreed except Mrs. Ingles and Mrs. Kalkreuth. They thought that the bus driver was mostly at fault, but that appellee Collie Collier was partly at fault himself. So the question was dropped and the jury went on to consideration of the special issues one at a time. The question as to who was at fault was not further discussed, though some of the jurors did refer to it as an agreement quite often thereafter in connection with other discussions.

On the other hand Mrs. Ingles herself testified that she made no agreement to try to answer the issues one way or the other, nor did she hear of any such agreement by the other jurors—there was never even a vote or a straw vote on the alleged general agreement. Miss Murray and Mrs. Foerster both denied that there was any agreement to frame their answers so that either party would win. Miss Murray further testified, "We discussed the evidence as we came to each question."

It was not misconduct for the jury to enter into a general discussion as to which party may have been at fault. Fisher v. Leach, Tex.Civ.App., 221 S.W.2d 384, 394. To constitute misconduct there must have been an agreement in advance as to which party the jury wanted to find for and thereafter an attempt to answer the issues with a view to bringing about such a result. Ford v. Carpenter, 147 Tex. 447, 216 S.W.2d 558. We cannot say that the evidence presents such a situation here with reference to appellant's Point No. 1(b). The point is overruled.

■ In their point No. 1(c), appellant asserts that three jurors on their voir dire examination concealed the fact that they or members of their immediate families had

prior or pending claims against appellant Dallas Transit Company.

We see no merit in this contention. The questions asked of the jurors, even according to appellant's witness, were whether any of the members of the panel had ever had any *serious collisions or lawsuits,* and the testimony is conflicting as to whether even these questions were asked. Miss Murray, a juror testified that she recalled no such questions being asked by appellant's attorney. Appellee's attorney testified that he heard no questions asked the jury panel as to whether any one had ever had a prior claim or a lawsuit against appellant.

The juror Alberts testified that in 1952 his wife had a collision with one of appellant's vehicles. Mr. Alberts made a claim which was allowed and paid by the Company without argument. He did not recall any questions asked by appellant's attorney at the voir dire examination of the jury panel that he considered would call for him to mention his wife's collision. Mrs. Kalkreuth, a juror, testified that her daughter had a fall on a bus a short time before the trial. The daughter, twenty years of age, was not living with Mrs. Kalkreuth at the time. Mrs. Kalkreuth herself had no claim against appellant, nor did she have any knowledge of any claim by her daughter at the time of the voir dire examination. A claim was later filed by the daughter. Appellant also asserts that its office records (cards) show that some sort of a claim was once filed by Mrs. Widener, a juror. The Court did not allow appellant to use the cards to prove up the nature and extent of the claim. Mrs. Widener was present at the hearing on the motion for new trial, but was not called as a witness.

None of the jurors mentioned the above alleged claims at the voir dire examination of the jury panel. However under the circumstances we must hold that reversible error is not shown. Point No. 1(c) is overruled.

In point No. 1(d) appellant says that one or more members of the jury discussed the question of appellant's insurance coverage.

With reference to this point, Mrs. Kalkreuth, a juror, testified as follows:

"Q. * * * I will ask you whether or not that you recall that you or the other juror mentioned the subject of the insurance coverage of the bus company? A. I am afraid that I did, but I think that it was at the end of it, more as a side issue, or an after-statement, or something like that. I mean, I * * *

"Q. After you had arrived at the total amount to be paid? A. Yes, I believe that is when it was, yes.

"Q. All right, at the time you brought it up, Mrs. Kalkreuth, do you remember exactly what was said, or substantially what was said? * * * A. * * * I believe that something was said by some member of the jury that the attorney, you, defense attorney, would not be too pleased with the amount.

"Q. Yes, ma'am. A. And I think that I said something to the effect. 'Well, he shouldn't mind, the insurance company would have to pay it, not the bus company'.

"Q. Uh-huh. Did anyone * * * do you suppose any other jurors heard you make the statement? A. I can't say as to that, I don't know.

"Q. Did any of the other jurors give any indication that they agreed with you as to the statement which you made? A. Oh, it seems to me that they may have laughed or something like that.

"Q. In response to the statement? A. That is right, that is all.

"Q. Did anyone offer any contradiction to what you said? A. No, not to my knowledge they didn't.

"Q. Now, as I understood a moment ago, you said that you thought it was after you had arrived at the figure. Could it have been some time prior to the final tabulation and final figure was agreed to? A. It could have been, but I don't think it was. * * *

"Q. As I understand it, your best recollection of this insurance was made as you all had finished with your verdict and getting ready to leave? A. To the best of my knowledge, yes."

Mrs. Ruggles, a juror, testified that there may have been a mention of insurance, but that she had no independent recollection of it. Mrs. Ingles testified that she did not recall any conversation dealing with insurance. Miss Murray testified that as far as she remembered there was not any discussion of insurance. Mrs. Foerster testified that she did not recall whether or not there was any discussion of insurance during the deliberations of the jury. These five jurors gave the only testimony at the hearing on the motion for new trial bearing on this point.

It is our opinion, based on the testimony as above summarized, that the mention of insurance by one of the jurors, if insurance was mentioned at all, occurred under such circumstances as to make the misconduct harmless under Rule 327 T.R.C.P. Appellant's point No. 1(d) is overruled.

Appellant in its brief argues that even if it should be held that no one of the alleged acts of misconduct constituted reversible error when considered separately from the others, when the acts are considered together we must hold that their accumulated effect probably caused harm to appellant. After carefully reviewing the evidence as a whole pertaining to the alleged jury misconduct we find ourselves unable to agree with appellant.

Appellant's point No. 2 asserts that "There being no objectively verifiable evidence of any specific permanent injury to any portion of the physical structure of plaintiff Collie Collier's body, and the only testimony as to any such permanent injury being based on the subjective complaints of one suffering from hysteria, the trial court erred in rendering judgment for plaintiff in the amount of $34,838.00 on the finding of the jury, which was so grossly excessive as to show in and of itself the bias, prejudice or other improper motive of the jury." The nature of this point requires that we carefully weigh the evidence pertaining to the nature and extent of appellee's injuries.

Appellee Collie Collier testified that he was injured Friday March 16, 1956, when a Chevrolet truck he was driving collided with one of appellant's busses at the intersection of Midway Road and Cresthaven Street in the City of Dallas. Immediately following the collision he complained of pain in his neck, shoulders, and back. At first he declined to go to a hospital saying he did not believe he was "hurt that bad". However, a police officer later took him from the scene of the collision to St. Paul's Hospital where he was given emergency treatment, then released several hours later. His pain continued, so on the following Tuesday he went to Dr. Loiselle, who arranged to have him enter St. Paul's Hospital again. This time he stayed in the hospital four days, then because of a death in his family, he discharged himself sooner than Dr. Loiselle had intended. His pains persisted and several times thereafter he went to Dr. Loiselle's office for treatment until Dr. Loiselle discharged him May 31, 1956. Thereafter he went to Dr. Sigler who treated him on numerous occasions up to the time of the trial. His pain continued all that time.

At the time of the injury appellee Collier was 53 years of age, with a life expectancy of approximately 19 years. He had had no education beyond the fourth grade in school. For about 20 years prior to the collision he had done manual labor, and had not missed a day's work on ac-

count of accident or sickness during that time. For seven or eight years his rate of pay had been $55 per week. He had not worked at all from the time of his injury in March 1956 until the time of the trial in September 1957.

Dr. Albert Loiselle, an orthopedic surgeon, called as a witness by appellant, testified that Collier first came to him March 19, 1956 complaining of pain in his neck, shoulders and back. Dr. Loiselle placed him in St. Paul's Hospital, where x-rays were taken. The doctor thereafter diagnosed his injuries as (1) acute strain of the cervical spine, that is the neck; (2) a mild strain in his lumbo sacral area, which is the low part of his back; and (3) hysteria, moderately severe, Collier was placed in traction—or to put it as Collier testified, "they put a halter on my neck * * * had me sleep on some boards on the bed * * * and had a big iron, great big iron weight on me, pulling my head." He also had traction on his leg. He felt some relief from pain while in the hospital.

After leaving the hospital he saw Dr. Loiselle five times: April 2, April 17, May 1, May 15 and May 31, 1956. At the April 2nd visit there was still some evidence of numbness in his entire left side, some muscle spasm in the low part of his back, and his spine was shifted a little bit. Heat was applied to his neck and back and he showed improvement. On subsequent visits Collier continued to complain of pain. However despite appellee's complaints of pain the doctor was unable to find any objective symptoms of orthopedic trouble and on May 31, 1956—all x-rays showing negative and there being no objective symptoms, and no further treatment being considered necessary—the patient was discharged.

Dr. Howard Sigler, an orthopedic surgeon, called as a witness by appellee, examined appellee Collier July 18, 1956. There were subjective symptoms of pain in the region of the neck, with weakness of his left arm and hand and pain in the lower portion of his back, which extended into both legs, but was more marked on the left side.

The objective symptoms were muscle spasm, stiffness of the neck, loss of strength in the left hand, and stiffness in the lower portion of his back. Sciatic nerve irritation and passive hyperextension were positive. On neurological examination he found a depressed sensation on the left side of the neck and the left upper extremity was less sensitive than the right, there was a decreased sensation on the outer side of his left leg, and the left patella reflex was decreased.

Appellee visited Dr. Sigler's office thirty-five times and was given treatment each time. The last visit was September 21, 1957, a few days before the trial. The diagnosis at this last visit was "Number one, whiplash injury of his cervical spine, with nerve root irritation. Number Two, sprain and instability of his lumbar spine. Number three, probably rupture of an intervertebral disc in his lower lumbar region, and minor osteoarthritic changes."

Dr. Sigler testified that in his opinion appellee has not been able to perform manual labor since his injury; and as to the future, he will not be able to hold a position that requires manual labor, and will not be able to work steady at a job that requires his presence seven or eight hours a day.

Dr. Sigler recommended that either (1) present treatments be continued merely to ease the pain which recurs from time to time, or (2) surgery be performed for the purpose (a) of accomplishing a spinal fusion, and (b) for exploration to ascertain whether there is a ruptured intervertebral disc. The spinal fusion would lessen appellee's pain.

■ Appellate courts are slow to reverse judgments and remand causes for new trial on the ground that the recovery is excessive in amount, especially when, as is the case here, a motion for new trial raising the point has been overruled by the trial

court. 3 Tex.Jur. 59–70. The amount of damages suffered is ordinarily a fact issue, and this court may not substitute its opinion for that of the jury if the jury verdict is supported by sufficient evidence. Texas & P. Ry. Co. v. Crown, Tex.Civ. App., 220 S.W.2d 294. In the record before us the testimony of appellee Collie Collier and Dr. Sigler is sufficient to support the jury verdict and the court's judgment of $34,838 damages. We believe our conclusion is supported by the holdings in the following cases. Thompson v. Robbins, Tex.Civ.App., 297 S.W.2d 247, affirmed, Tex.Civ.App., 304 S.W.2d 111; Texas & N. O. R. Co. v. Pettit, Tex.Civ.App., 290 S.W.2d 730; John F. Buckner & Sons v. Allen, Tex.Civ.App., 289 S.W.2d 387; Prater v. Holbrook, Tex.Civ.App., 283 S.W.2d 263; Appellant's point No. 2 is overruled.

The judgment of the trial court is affirmed.

Affirmed.