**TEXAS AND NEW ORLEANS RAILROAD COMPANY, Appellant,**

v.

**Socorro PEREZ, Appellee.**

No. 13708.

Court of Civil Appeals of Texas.

Houston.

May 11, 1961.

Rehearing Denied May 25, 1961.

Houchins, Anderson, Smith & Null; William C. Sparks, Victoria, Bell, Camp & Gwin, Bay City, for appellant.

Moise H. Simon, Bay City, Helm, Jones, McDermott & Pletcher, Albert P. Jones, George E. Pletcher, Houston, for appellee.

WERLEIN, Justice.

Texas and New Orleans Railroad Company appeals from a judgment based on a jury verdict awarding appellee, Socorro Perez, $30,000 for personal injuries sustained by him when lifting a mowing machine onto a railroad track while engaged in interstate commerce within the provisions of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq.

Appellant complains that the argument of appellee's attorney was reasonably calculated to advise the jury of the effect of their answers to the special issues submitted. We have carefully read and analyzed the arguments complained of and do not agree with appellant.

■ The arguments do not call upon the jurors to answer the issues so that appellee might prevail. Counsel had the right to tell the jurors how he felt the issues should be answered so long as he did not ask for answers on the basis of producing a specific result. It may be assumed that any juror of average intelligence would know that counsel on both sides were arguing for answers favorable to their respective clients. It has been held that counsel may beg the jury to answer certain issues "yes" and other issues "no" in keeping with the evidence, if he does not tell the jury that the answers he begs would result in a judgment for his client. Texas & N. O. R. Co. v. McGinnis, 1937, 130 Tex. 338, 109 S.W.2d 160.

■ It is our view that the argument of appellee's counsel did not inform the jury as to the effect of their answers. But if we are mistaken in so holding, appellant waived any right to complain by not objecting to such argument. The court was afforded no opportunity to instruct the jury with respect to the argument and appellee's counsel was given no opportunity to retract or withdraw his remarks. Unquestionably, counsel's argument was not of the incurable variety. Much more objectionable argument has been held curable by instruction. Younger Brothers, Inc. v. Myers, Tex.Sup.1959, 324 S.W.2d 546. Even if it could be said that counsel's argument was reasonably calculated to inform the jury of the effect of their answers to the special issues, the impropriety of such argument could have been cured by appropriate and timely instructions from the court had appellant objected thereto. Household Furniture Co. v. Storrie, Tex.Civ.App., 292 S.W. 612; Davis v. Christmas, Tex.Civ.App., 248 S.W. 126, writ dism.; Galveston, H. & S. A. Ry. Co. v. Easton, Tex.Civ.App., 257 S.W. 924, writ dism.; McMullen v. Parker, Tex.Civ.App., 45 S.W.2d 1011; Gillette Motor Transport, Inc. v. Blair, Tex.Civ. App., 136 S.W.2d 656, writ dism. c. j.; Airline Motor Coaches v. McCormick, Tex. Civ.App., 186 S.W.2d 689.

Appellant next complains of alleged jury misconduct consisting of three improper remarks made while the jury were considering of their verdict. Juror, Mrs. Mc-

Geh.e, testified that while discussing the damage issue the lowest amount that any of the jurors indicated they wanted to give was $27,500, and others wanted to award $45,000 and some $50,000; that one juror said appellee's four children were not old enough to work and would have to have something to live on; that one juror said "give him enough so when the lawyers get paid, there will be enough left for Perez"; that such statement was made only once; that one of the colored jurors said "The railroad has lots of money, give him the full amount"; that there was no further discussion along those lines, and only one statement was made; that the jury finally arrived at $30,000.

Juror Lemons testified that he did not say anything to the other jurors about the plaintiff's children. He was not interrogated by appellant's counsel with reference to the other remarks mentioned by Mrs. McGehee.

Mr. Neuszer, the jury foreman, when asked concerning the statement of Mrs. McGehee that one juror said something about the lawyers would have to be paid, testified that he immediately stopped the mention of that and it was never mentioned again; that as he recalled on the first vote, one juror was for $27,500, six for $30,000, one for $35,000 and one for $45,000; that he did not hear anyone say anything with reference to the Railroad being able to pay a judgment; that he asked the jury when they first went into the jury room to consider the Railroad as an individual and not harm them as someone financially able to pay more money than an individual; that if there was any mention of the Railroad as a railroad, the remark was definitely made by him when he told the jury to consider the case as one individual against another; that someone mentioned plaintiff's children to the effect that they helped him in his work, and that he [Neuszer] asked the jury not to consider it because it was not a part of the evidence, and that such remark was mentioned only once and was never brought up again.

 It is apparent from the record that there was no discussion of the matters about which Mrs. McGehee testified. Mr. Neuszer did not recall any comment with reference to the ability of appellant to pay a judgment. His testimony was that the only remark made was made by himself when he told the jury to consider the appellant as an individual. The mention of appellee's children occurred but once. The evidence is conflicting as to what was said, and the jury were instructed not to consider it, and the matter was never brought up again. By overruling appellant's motion for new trial, the trial judge resolved the fact issues against appellant upon ample evidence, or concluded that what was mentioned did not affect the jury in its deliberations. In evaluating the evidence on motion for new trial, the trial judge is accorded the same latitude in passing upon the credibility of the witnesses and the weight to be given their testimony as is a jury upon trial of the cause. Where there are conflicts in the testimony of the jurors, the overruling of the motion for new trial carries with it the implied fact findings that the misconduct did not occur. Monkey Grip Rubber Co. v. Walton, 122 Tex. 185, 53 S.W.2d 770; Texas Employers' Insurance Ass'n v. Hicks, Tex.Civ.App., 237 S.W.2d 699, writ ref., n. r. e.; Boyd v. Texas Employers' Insurance Ass'n, Tex. Civ.App., 207 S.W.2d 709, writ ref.

The testimony shows that one juror mentioned that appellee's lawyers would have to be paid. The comment was made only once. The foreman immediately stopped it, and it was never mentioned again. It has been held in a number of cases that the mere mention of attorney's fees does not constitute reversible error when the jury is promptly admonished or instructed by the foreman not to consider that question, and there is no further mention thereof. There is ample evidence in the present case to support a conclusion by the trial judge that the one mention of attorney's fees was immediately rebuked by the foreman, and that the matter ended right there without any dis-

cussion whatever. McCullough Box & Crate Co. v. Liles, Tex.Civ.App., 162 S.W.2d 1055, writ ref., w. m.; J. D. Wright & Son Truck Line v. Chandler, Tex.Civ. App., 231 S.W.2d 786, writ ref., n. r. e.; Walker v. Thompson, Tex.Civ.App., 287 S.W.2d 556, writ ref., n. r. e.

We cannot say that it reasonably appears from the evidence, both on the hearing of the motion for new trial and the trial of the case and from the record as a whole, that injury probably resulted to appellant because of the remarks or comments above mentioned. Rule 327, Texas Rules of Civil Procedure; Walker v. Thompson, supra.

■ There is no merit in appellant's assertion that the court erred in not granting a new trial because of a communication between appellee and one of the jurors. Juror Lemons testified that right after lunch when practically every one was in the court room, and he was walking past where appellee sat, appellee handed him a picture which he handed right back to appellee; that he never quit walking and only slightly glanced at the picture which was of people; that he didn't know whether the people were large or small or whether they were grown or children; that he (Lemons) did not say anything to the other jurors about appellee's children, and appellee never said the picture was of his children; that appellee said nothing at all; and that nothing was said in the jury room about the matter.

The trial judge was privileged to believe that Lemons was telling the truth and that the trivial incident which occurred did not result in any probable harm. There is no resemblance between such incident and the flagrant conduct of the plaintiff in Texas Employers' Insurance Ass'n v. McCaslin, Tex.Sup.1958, 317 S.W.2d 916. We have at most in the present case what appears to be the ill-advised and perhaps thoughtless act of an uneducated plaintiff whose limited knowledge of the English language necessitated the use of an interpreter, exhibiting a picture of some unidentified people. Our Supreme Court has respected the conclusions reached by trial courts after hearing the evidence on motions for new trial in cases where the communication with a juror was far more calculated to produce harm than the incident in this case. Ross v. Texas Employers' Ins. Ass'n, 1954, 153 Tex. 276, 267 S.W.2d 541; Watson v. Texas Indemnity Ins. Co., 1948, 147 Tex. 40, 210 S.W.2d 989.

Appellant in its last Point asserts that the court erred in refusing to grant a new trial on the ground that the damages allowed by the jury are manifestly excessive.

■ Appellee sustained his injury on July 30, 1957, when his feet gave way on loose gravel while assisting in lifting a heavy mowing machine onto a railroad track. He felt a popping noise in his back when his foot slipped. At the time of his injury he was 49 years of age and had a life expectancy of 22.12 years. He had been working regularly for appellant for a number of years as a section crew employee doing hard manual labor, for which he was paid $240 to $250 per month. After sustaining his injury he stayed on the job as flagman until August 7, 1957 when he was sent by appellant's depot agent to Dr. Barbour. On August 30, 1957 he went to the Southern Pacific Hospital in Houston where he stayed until January 1, 1958. While he was in the hospital he was operated on for a double inguinal hernia. He denied having the hernia before his accident. At the time he left the hospital, the attending physician gave him a corset to wear, which he has worn almost continuously since. He denied that he had had any back injury prior to his accident. Since his injury he has had pain in his back much of the time and pain down his right leg to his foot and some trouble with his arms. He has been unable to do the work that he did before and has made on an average of some $6 or $7 a week doing yard work with the help of his sons.

Dr. Cowart, who first saw appellee on January 23, 1959, testified that at that time

appellee complained of an abdominal hernia, neck pain, back pain and pain in his right leg. Dr. Cowart made a diagnosis of hypertension, chronic bronchial asthma, umbilical hernia, and a recurrence of epigastric hernia which was repaired at the Southern Pacific Hospital in 1957, osteoarthritis of the cervical and lumbar spine and muscle spasm. On the basis of his examination and findings, Dr. Cowart concluded that clinically Perez had a ruptured intervertebral disc which could have been caused by lifting a heavy weight while in a bending or awkward position. Dr. Cowart expressed the opinion that Perez was totally disabled from working as a railroad section hand and that his disability was permanent as concerns his occupation. X-rays showed some tilting of Perez's spine, and a lumbar compensatory scoliosis on the right, tenderness to palpitation of the muscles in the lower lumbar area, and decreased sensation in the lower right leg and foot anteriolaterally, and limitation of motion of the lumbo-sacral spine. He further testified there would be some permanent disability even if appellee underwent a successful operation on his back.

Appellant's witness, Dr. Pedro Caran, testified he first saw Perez on November 20, 1957. There was marked muscle spasm in the lumbar region on the left side, low back muscle strain with possible instability of the back and nerve root irritation. He recommended a brace that would be obtained from the orthopedic staff to keep Perez's back in an erect position. He testified that he saw appellee on January 8, 1958 and found that Perez had back pain from muscle spasm and that his reflexes were hyperactive in all extremities; that his ankle jerk was depressed; and that there was a diminution of pain sensation in the anterior aspect of the thigh and inner aspect of the left leg. He felt that appellee was unable to do heavy lifting and would probably have difficulty with his back from

now on. He testified that appellee had muscle spasm and muscle spasm is one symptom of a ruptured disc; that on each occasion except the last when he saw him, there was diminished ankle jerk, which is a positive sign of a ruptured disc. He recommended a myelogram. Dr. Caran admitted that arthritis makes a person more susceptible to injury and that an injury superimposed on arthritis can set it off and cause it to become disabling and painful, and that Perez did not have any more chance of getting a job with a railroad than he had of becoming President of the United States.

There is nothing in the record to show bias or prejudice or other improper motive on the part of the jury that would warrant disturbing the verdict in this case. The evidence as hereinabove recited shows that appellee sustained severe injuries, in part permanent, and that he will never be able to do hard manual work. He is not qualified to do other than manual labor, and is therefore incapacitated from earning a livelihood. We do not consider the verdict excessive or in any way disproportionate to the injuries sustained by appellee. Larger verdicts have been awarded and upheld for injuries apparently no more painful and incapacitating than those sustained by appellee. Port Terminal Railroad Association v. Noland, Tex.Civ.App., 288 S.W.2d 276, writ ref., n. r. e.; Missouri-Pacific R. R. Co. v. Rhoden, Tex.Civ.App., 310 S.W.2d 607. We think the amount awarded is not relatively disproportionate to awards for injuries made in other cases. Missouri-Pacific Railroad Co. v. Ramirez, Tex.Civ. App., 326 S.W.2d 50, writ ref., n. r. e.; Thompson v. Barnes, Tex.Civ.App., 236 S.W.2d 656; Thompson, Trustee v. Robbins, Tex.Civ.App., 297 S.W.2d 247, affirmed 157 Tex. 463, 304 S.W.2d 111.

Further citation of authority is unnecessary. The judgment of the Trial Court is affirmed.